Tony Ray Patton was indicted for attempted murder in violation of § 13A-4-2, Code of Alabama 1975. The jury found the appellant guilty as charged of the lesser included offense of assault in the first degree. The appellant was sentenced to 20 years' imprisonment in the state penitentiary.
Around 10:00 p.m. on October 31, 1985, a fight broke out inside the Holiday Skate Center which is located in Birmingham, Alabama. Many people were involved in this fight, including the appellant and Rodney Harding, the victim. One participant in the fight, Mancy Cole, told Michael Bradley that he would "blow his head off." (R. 274). Mancy Cole was seen with either a gun or knife inside his jacket while still inside the skating rink. Cole also said that someone was going to "get capped" that night. (R. 182). The appellant's brief defined this as "shot".
A short while later a crowd gathered outside in the parking lot of the skating rink. Some of the participants in the fight inside were among the crowd. Several people in the crowd were arguing. The victim, Harding, stated that Mancy Cole told him, "You better come get your friends because I'm fixing to shoot one of them." (R. 133).
A few minutes later a shot was fired. The victim, Harding, Donnie Robinson and, also, an unnamed person, were hit by shotgun pellets. The victim and Robinson were made permanently blind as a result of their injuries.
Immediately prior to the shooting, Gerald Powell saw this appellant with a shotgun. Sam Pugh also saw this appellant with a sawed-off shotgun prior to this shooting. Pugh testified that this appellant fired one shot. However, Rodney Squares testified that he saw a man with a shotgun prior to the shooting and that man was not this appellant.
Immediately after the shot was fired, two witnesses saw this appellant running away toward Valley Avenue.
Wayne Walton testified that he was a passenger in a car on Valley Avenue around 10:15 on the night of the shooting. He saw a man run across Valley Avenue and later identified this man as this appellant. Walton testified that, when the appellant stumbled, he saw a "twelve-gauge pump, sawed-off" shotgun under his coat. (R. 296).
A few minutes later, Walton went to a convenience store and told Robert Stewart, a Homewood Police Officer, about this incident. While the two men were talking, a man stepped out of the woods near the convenience store. Both Walton and Stewart identified this man as the appellant. The appellant did not have a gun at this time. As Stewart approached the appellant, the appellant ran. Stewart attempted to pursue the appellant but lost sight of him. Stewart then gave a description of the appellant, Patton, over his police radio.
A short time later, Officer William Walls and his partner, both Homewood Police Officers, saw an individual who they believed fit the description which they had received over their radio. They apprehended this individual and identified him as this appellant. The appellant was out of breath and had a shotgun shell in the front pocket of his pants. *Page 888 
Walls and his partner went to the Holiday Skate Center to turn the appellant over to the Birmingham Police Department.
The appellant, Patton, testified that he met a man named Eric Lucas at the skating rink on the night in question. While outside the skating rink, the appellant saw Lucas remove a shotgun from a blue Chevelle automobile. Lucas appeared as if he were going to shoot this gun. The appellant tried to hold Lucas back from shooting the gun. Lucas was able to fire a shot. After Lucas fired the shot, the appellant testified that he started running toward Valley Avenue and was later arrested.
Sergeant Ann Ballard, an investigating officer for the Birmingham Police Department, testified that she interviewed several witnesses in connection with this case. Ballard stated that she did not locate Mancy Cole, who made several threatening comments prior to the shooting. Ballard testified that she was also unable to locate Eric Lucas. She stated that she went to the address listed on Lucas' driver's license and discovered that he no longer lived at this address. No further attempt was made to locate Lucas.
 I
Following the trial, this appellant filed a motion for a new trial alleging that the prosecutor had failed to turn over exculpatory material to him as required by Brady v. Maryland,373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). The basis of this allegation came from a telephone call which the appellant's counsel received two weeks after the appellant's trial and conviction.
Carmen McCain called appellant's counsel, Douglas Scofield, and told him that she was at the skating rink on the night of this shooting. McCain stated to appellant's counsel that she saw the skating rink security guard, Patrick Davis, fire the shot in question that night. McCain also said that she had called the Birmingham Police Department and informed them of this fact. This information was never conveyed to the appellant or his counsel by Birmingham police or the District Attorney's Office prior to, or during the trial of this cause.
At the hearing on the motion for a new trial, McCain testified that she was outside the skating rink when the shooting occurred. At this time she saw several people who were arguing with the security guard, Davis. She stated that the security guard seemed angry. At one point she heard the security guard tell the group, "Just be there when I get back." (R. 531). Shortly thereafter, the security guard returned with a "long gun". McCain then heard a shotgun blast and immediately left the skating rink.
McCain testified that the next day she called the Birmingham Police Department and talked to Sgt. Ballard. McCain told Ballard what she had seen at the skating rink that night and Ballard stated, "Those facts don't sound anything like what I've already heard." (R. 536-537). McCain testified that she could not remember whether vel non she gave her name to Ballard.
Patrick Bailey testified that, at one time, he had been employed as a security guard at the Holiday Skate Center. However, Bailey was not employed there when the shooting in question occurred. Bailey stated that the day after this shooting he went to the skating rink. While there, Bailey overheard several people say that the security guard had pulled a shotgun or a rifle on the night of the shooting.
Patrick Davis testified that he was the security guard on duty on the night of the shooting in question. Davis denied firing a shot that night but he did admit that he had a shotgun outside the skating rink on the night of the shooting. He stated that he brought the shotgun from within the building to the outdoors after the shooting.
Sgt. Ballard testified that approximately a week after the shooting she received a telephone call which indicated that someone other than this appellant, Patton, had fired the shotgun on the night in question. Ballard did not recall the security guard as being named as the one who fired this shot. Ballard stated that the caller was a female, but the caller did not give a name, phone number or address. Ballard's opinion was *Page 889 
that the caller really did not see the shooting.
Ballard acknowledged that, during the course of the investigation of this matter, the appellant's attorney came to her office to examine some of the evidence. Ballard testified that, prior to trial, she had told appellant's counsel, Scofield, about receiving another anonymous phone call which indicated that a man named "Square" had the shotgun. However, this anonymous caller had stated that the appellant, Patton, fired the shot that night. Ballard testified that she did not disclose at any time to this appellant or his counsel that she had received an anonymous phone call from a possible eyewitness who stated that the security guard had fired the shot in question.
During the course of the hearing on the motion for new trial, the prosecutor admitted that the telephone call which Carmen McCain testified that she made to Ballard was the same call which Ballard had admitted receiving.
Following this hearing, the trial judge denied the motion for a new trial. The appellant now asserts this ruling as error to reversal.
In Brady, supra, the United States Supreme Court determined that due process of law requires a prosecutor, upon request, to reveal favorable evidence to the accused, or his counsel, which is material to guilt or punishment of the accused, irrespective of the good or bad faith of the prosecution.
Prior to trial, Scofield, as appellant's counsel, filed a pretrial motion for discovery which requested, "[a]ny and all exculpatory or otherwise favorable information as provided in such cases as Brady v. Maryland, . . ." (citation omitted) (Supplemental R. 289).
In the trial court's order for discovery and production, the trial court stated:
 "F) [N]othing in this order shall be construed to limit the discovery of exculpatory material or other material to which a defendant is entitled under constitutional provisions or other provisions of law. Any and all material in the possession of the prosecution, or which through due diligence may be learned by the state which might exculpate the defendant, negate the charges against him, lead to reasonable doubt about his guilt, shall be made available to defendant. This includes, but not limited to, promises or agreements as to treatment afforded state witnesses, information having to do with witnesses incorrect identification, results of scientific, physical, or medical tests which might exculpate the defendant." (Supplemental R. 287).
See also, A. Tem.R.Crim.P. 18.
It is clear from this record that the appellant made a specific request for "exculpatory evidence under Brady" and this request was so ordered by the trial court.
In Knight v. State, 478 So.2d 332 (Ala.Crim.App. 1985), this court, quoting Monroe v. Blackburn, 607 F.2d 148, 150 (5th Cir. 1979), stated that three elements must be proven to establish aBrady violation. In Knight, 478 So.2d at 335, these elements were stated:
 "(1) The prosecution's suppression of evidence; (2) The favorable character of the suppressed evidence for the defense; (3) The materiality of the suppressed evidence."
First, it is clear that the prosecution here suppressed the evidence concerning the anonymous phone call as to the security guard, Davis. Although the prosecutor did not know about this telephone call, the knowledge of Sgt. Ballard is imputed to the prosecutor. See Fulford v. Maggio, 692 F.2d 354, 358 (5th Cir. 1982), rev'd on other grounds, 462 U.S. 111, 103 S.Ct. 2261,76 L.Ed.2d 794 (1983); United States v. Jensen, 608 F.2d 1349 (10th Cir. 1979). Furthermore, the State in its brief concedes this point. The exculpatory information contained in the anonymous call was never disclosed prior to, or during, the course of the trial to this appellant or his counsel. Thus, it is clear that the first element of Knight defining Brady is shown by the record of the hearing.
Secondly, there is no doubt that the information relayed by the anonymous caller to Sgt. Ballard was favorable to the accused, *Page 890 
Tony Patton. In United States v. Bagley, 473 U.S. 667, 676,105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985), the United States Supreme Court defined favorable evidence to the accused as evidence "if disclosed and used effectively, . . . may make the difference between conviction and acquittal."
In this cause, the withheld evidence was a telephone call from an alleged eyewitness who stated that someone other than this appellant did fire the shot at issue from a shotgun. Certainly, if this evidence had been disclosed to appellant's counsel prior to trial and, thus, used by appellant's counsel at trial, it very likely would have made a difference, by creating a reasonable doubt with the jury before it reached its verdict.
Thirdly, we find the suppressed information was material to this appellant's case. In Bagley, the United States Supreme Court addressed the materiality of suppressed or withheld evidence. The court stated that:
 "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense the result of the proceeding would have been different. A `reasonable probability' is a probability sufficient to undermine confidence in the outcome."
* * * * * *
 "We agree that the prosecutor's failure to respond fully to a Brady request may impair the adversary process in this manner. And the more specifically the defense requests certain evidence, thus putting the prosecutor on notice of its value, the more reasonable it is for the defense to assume from the nondisclosure that the evidence does not exist, and to make pretrial and trial decisions on the basis of this assumption. . . . The reviewing court should assess the possibility that such effect might have occurred in light of the totality of the circumstances and with an awareness of the difficulty of reconstructing in a post-trial proceeding the course that the defense and the trial would have taken had the defense not been misled by the prosecutor's incomplete response."
Bagley, 473 U.S. at 682-83, 105 S.Ct. at 3384, 87 L.Ed.2d at 494,
Furthermore,
 "[T]he omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt."
Knight, 478 So.2d at 336 (quoting Agurs v. United States,427 U.S. 97, 112-13, 96 S.Ct. 2392, 2401-02, 49 L.Ed.2d 342, 355
(1976)). See also Wyrsch and Hunt, Specific Requests forExculpatory Evidence After United States v. Bagley, 55 UMKC L.Rev. 50 (1986); Note, Specific Requests and the ProsecutorialDuty to Disclose Evidence: The Impact of United States v. Bagley, 1986 Duke L.J. 892 (1986).
After examining the totality of the circumstances in this case, we find there is a reasonable probability that the result would have been different if the information contained in the anonymous call to Sgt. Ballard had been disclosed to the defense before trial.
Our finding is based upon a review of the record as a whole and the testimony of the witnesses at trial. Several witnesses testified that one Mancy Cole had made statements threatening to shoot someone just before the shotgun blast at issue. It appears from the record that very little effort was made to locate Mancy Cole. The security guard at the skating rink on the night in question, Patrick Davis, was never interviewed by Sgt. Ballard even though it appears that the anonymous caller in question told Ballard that the security guard, and not this appellant, committed this offense.
This is especially significant in view of the fact that the security guard had a shotgun at the scene of the shooting at issue. Sgt. Ballard did inform appellant's counsel about a different anonymous call *Page 891 
stating that the appellant had been the one who did the shooting. However, Sgt. Ballard did not think it was important to inform appellant's counsel about the other, second anonymous call from an eyewitness who stated that someone other than this appellant did the shooting in question.
Had this anonymous telephone call been disclosed to appellant's counsel before trial, his use of the information contained in such call very likely would have been sufficient to create a reasonable doubt in the jurors' minds. Thus, we conclude that the withheld and, therefore, suppressed evidence was material to this cause.
The State asserts that the information contained in the anonymous call was not material because it would have been inadmissible at trial.
However, the Alabama Supreme Court, in addressing admissibility of suppressed evidence under Brady, has held that "the crucial question is the significance of the suppressed information upon the question of the [defendant's] guilt or innocence" and not the admissibility of the suppressed evidence. Ex Parte Watkins,509 So.2d 1064, 1066 (Ala. 1984). See also Raines v. Smith No. CV 83-P-1080-S (N.D.Ala, Oct. 3, 1983) (unpublished) [available on WESTLAW, 1983 WL 3310] (wherein the federal district court held that admissibility concerning suppressed evidence should not be a factor in deciding the materiality of evidence of a Brady
violation) (citing Sellers v. Estelle, 651 F.2d 1074, 1077, n. 6 (5th Cir. 1981), cert. denied, 455 U.S. 927, 102 S.Ct. 1292,71 L.Ed.2d 472 (1982).
Thus, this court concludes that the fact that the information contained in the anonymous call to Sgt. Ballard may have been inadmissible at trial is irrelevant under the Brady test.
The State further asserts that a Brady violation was not established here because the appellant had another source from which the information contained in the anonymous call could have been obtained by this appellant. The appellant's grandmother testified at the hearing on the motion for a new trial that she had heard, prior to the appellant's conviction, that there was a woman who was claiming that this appellant did not do the shooting at issue. The grandmother did not know the woman's name, exactly what the woman had seen or how to get in touch with her. The appellant and his attorney testified that the appellant's grandmother did not tell them of this possible witness until after the trial and conviction at bar.
The authorities cited by the State address situations where the defendant or his counsel knew or should have known about the information at issue. It is clear that the appellant and his counsel did not know about the information which the grandmother had heard until after the appellant's trial and conviction. We have found no authority which indicates that the defendant or his counsel should be held accountable as to information known by a defendant's grandmother but not revealed until after trial. Furthermore, it is unclear from this record as to whether vel non the woman whom the appellant's grandmother heard about was, in fact, the same woman who made the anonymous call to Sgt. Ballard.
Therefore, we find that the State should have disclosed the exculpatory evidence contained in the anonymous telephone call to Sgt. Ballard to the appellant and his counsel. The State's failure to do so was a clear violation of appellant's right to due process of law under Brady, supra.
We, thus, hold that the trial court erred to reversal in not granting this appellant's motion for a new trial. This cause is due to be and the same is, hereby, reversed and remanded.
We pretermit a discussion of the other issues raised in this cause due to our disposition of this appeal as herein indicated.
REVERSED AND REMANDED.
All the Judges concur. *Page 892