REL:09/30/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## SPECIAL TERM, 2014

_____

### 1121390

_____

**Ex parte State of Alabama**

**PETITION FOR WRIT Of MANDAMUS**

**(In re: State of Alabama**

**v.**

**Andre Lamon Ellis)**

**(Pike Circuit Court, CV-12-238)**

BOLIN, Justice.

The State of Alabama petitions this Court for a writ of mandamus directing Judge Jeffrey W. Kelley of the Pike Circuit

Court to vacate his May 17, 2013, order granting Andre Lamon Ellis's motion for a new trial. We deny the petition.

### I.  Facts and Procedural History

On March 26, 2012, M.B. was allegedly raped in her residence located in Hunter's Mountain Mobile Estates. M.B. identified Ellis in a police photographic lineup as the perpetrator. Although there was no forensic or physical evidence linking Ellis to the alleged rape, a video from a security camera located at Hunter's Mountain on that day showed Ellis's vehicle entering Hunter's Mountain at 4:41 p.m. and leaving at 4:46 p.m. Ellis, in fact, lived in Hunter's Mountain.  Following the alleged rape, M.B. went to the hospital with vaginal injuries requiring multiple surgeries. M.B. initially reported to her doctor that she had fallen on a "door stop" in her bathroom but later stated that she had been raped.

On January 18, 2013, Ellis was convicted of rape in the first degree regarding Q.C.,[1] rape in the first degree

---

[1]Q.C. also lived in Hunter's Mountain and claimed to have been raped by Ellis on the same day M.B. alleged that she was raped .  Although there were separate indictments charging Ellis with the rapes of both M.B. and Q.C., the cases were tried jointly.

1121390

regarding M.B., and burglary in the second degree regarding the residence of M.B. Ellis was sentenced to 85 years in prison. On March 25, 2013, Ellis moved for a new trial, alleging, among other things, that the State had failed to disclose crucial evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). The trial court ordered the State to disclose in camera certain evidence and, after conducting a hearing, entered an order dated May 17, 2013, granting Ellis's motion for a new trial based on the State's failure to turn over evidence in violation of Rule 16, Ala. R. Crim. P., and in violation of the principles of law set forth in Brady v. Maryland. The State filed a motion for reconsideration, on which the trial court did not rule.

On June 24, 2013, the 38th day after the trial court ordered a new trial, the State filed a petition for a writ of mandamus with the Court of Criminal Appeals pursuant to Rule 21, Ala. R. App. P. In its petition, the State sought a writ directing the trial court to set aside its order granting Ellis's motion for a new trial. The State had relied on Rule 4(b)(1), Ala. R. App. P., to determine that it had 42 days from the date of the order to file its petition.

3

1121390

On August 20, 2013, the Court of Criminal Appeals entered an order dismissing the State's petition after concluding that it was not filed within a presumptively reasonable time and that the State had failed to include a "statement of circumstances constituting good cause" as to why the petition had been filed outside the presumptively reasonable time. See Rule 21(a)(3), Ala. R. App. P.  The Court of Criminal Appeals determined that the presumptively reasonable time for the State to file its petition was seven days from the date of the trial court's ruling that was subject to the petition. See Rule 15.7, Ala. R. Crim. P.  The State did not file an application for rehearing with the Court of Criminal Appeals. State v. Ellis (No. CR-12-1514, Aug. 20, 2013), ___ So. 3d ___ (Ala. Crim. App. 2013) (table).

On August 30, 2013, the State filed its petition for a writ of mandamus in this Court pursuant to Rule 21(e), Ala. R. App. P., seeking de novo review of the Court of Criminal Appeals' dismissal of its original petition, as well as a writ directing the trial judge to vacate its order granting Ellis's motion for a new trial. The State included in its petition a mandatory statement of circumstances constituting good cause

4

for this Court's consideration. This Court issued an order dismissing the State's petition as untimely.

On January 27, 2014, the State filed an application for a rehearing complaining that this Court's order dismissing its petition for a writ of mandamus failed to "address whether the State's petition was untimely filed with the Supreme Court or if the State's original Petition for Writ of Mandamus filed with the Alabama Court of Criminal Appeals was untimely." Specifically, the State argued that its original petition filed with the Court of Criminal Appeals was not untimely because, it claimed, it did not seek review of a pretrial order pursuant to Rule 15.7, Ala. R. Crim. P., but rather sought relief from a posttrial order granting Ellis's motion for a new trial.

On March 31, 2014, this Court granted the State's application for a rehearing, and on June 9, 2014, we ordered the parties to file answers and briefs. We also ordered the parties to include in their briefs a discussion as to "whether [this] Court is vested with jurisdiction and whether the proper time standard for submitting [the State's petition to

the Court of Criminal Appeals] is pursuant to Rule 4(b), Ala. R. App. P., or Rule 15.7(b), Ala. R. Crim. P."

## II. Standard of Review

"Mandamus is an extraordinary remedy and will be issued only when there is '(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Alfab, Inc., 586 So. 2d 889, 891 (Ala. 1991). 'A decision of a court of appeals on an original petition for writ of mandamus or prohibition or other extraordinary writ (i.e., a decision on a petition filed in the court of appeals) may be reviewed de novo in the supreme court....' Rule 21(e)(1), Ala. R. App. P."

Ex parte Sharp, 893 So. 2d 571, 573 (Ala. 2003).

## III. Discussion

### A. Applicable Time: Rule 15.7, Ala. R. Crim. P., or Rule 4(b), Ala. R. App. P.?

Rule 21(a)(3), Ala. R. App. P., provides that "[t]he presumptively reasonable time for filing a petition [for a writ of mandamus] seeking review of an order of a trial court or of a lower appellate court shall be the same as the time for taking an appeal." The State maintains that, in dismissing its original petition for a writ of mandamus as untimely, the Court of Criminal Appeals assumed that the State was taking an appeal from a pretrial order pursuant to Rule 15.7(b), Ala. R.

6

1121390

Crim. P., and that the court therefore improperly held that the 7-day period in Rule 15.7 for filing its petition applied instead of the 42-day period in Rule 4(b), Ala. R. App. P. We agree.

Rule 15.7, Ala. R. Crim. P., governs pretrial appeals by the State; it provides, in pertinent part:

"(a) Generally. In any case involving a felony, a misdemeanor, or a violation, an appeal may be taken by the state to the Court of Criminal Appeals from a <u>pre-trial order</u> of the circuit court (1) <u>suppressing a confession or admission or other evidence</u>, (2) <u>dismissing an indictment, information, or complaint (or any part of an indictment, information, or complaint)</u>, or (3) <u>quashing an arrest or search warrant</u>. Such an appeal may be taken <u>only if the prosecutor certifies</u> to the Court of Criminal Appeals that the appeal is not brought for the purpose of delay and <u>that the order, if not reversed on appeal, will be fatal to the prosecution of the charge</u>."

(Emphasis added.)

Rule 15.7(b) provides that the State's notice of appeal from such a pretrial order shall be filed "within seven (7) days after the order has been entered, but in any case before the defendant has been placed in jeopardy under established rules of law." It is clear that the State in this case was not taking an appeal from a pretrial order "suppressing a confession or admission or other evidence"; "dismissing an

7

indictment, information, or complaint"; or quashing an arrest or search warrant" -- any of which would require the State to certify that the order appealed from, if not reversed, would be fatal to the prosecution of the charge. Rather, the State was seeking review of a posttrial order granting a new trial following a jury verdict; accordingly, the State could not have certified that the "order, if not reversed on appeal," would be fatal to the prosecution of the charge. Because the State did not seek review of a <u>pre</u>trial order, but rather of a <u>post</u>trial order, we conclude that the State's mandamus petition in the Court of Criminal Appeals, filed on the 38th day after the trial court's ruling, was filed within a reasonable time pursuant to Rule 21, Ala. R. App. P., and Rule 4(b), Ala. R. App. P. Therefore, its petition for a writ of mandamus filed in this Court within 14 days of the denial of the State's application for rehearing by the Court of Criminal Appeals is timely.

Rule 4(b), Ala. R. App. P., contemplates appeals by the State when authorized by statute or rule:

> "When an <u>appeal by the state as of right is authorized by statute or rule</u>, the notice of appeal shall be filed in the trial court within 42 days (6 weeks) after the decision, order, or judgment

appealed from; except that any pre-trial appeal by the state shall be taken within the time allowed by [Rule 15.7, Ala. R. Crim. P.]."[2]

(Emphasis added.) The State does not dispute that it has no right to appeal from an order granting a new trial.

### B. Grounds for Issuance of the Writ

The State maintains that, in the absence of a right to appeal, a writ of mandamus is the appropriate vehicle by which to challenge the trial court's ruling granting a new trial. Specifically, the State asserts that this Court should grant mandamus review because, it says, in granting a new trial in this case the trial court exceeded its discretion and usurped the factfinding province of the jury. In Ex parte Nice, 407 So. 2d 874, 879 (Ala. 1981), this Court held that "[m]andamus cannot be used as a substitute for appeal, when no appeal is authorized by law or court rule, but mandamus can be used to prevent a gross disruption in the administration of criminal

---

[2]The State's power to appeal from an adverse ruling of the trial court is authorized by § 12-12-70(c), Ala. Code 1975 (an appeal from a judgment holding a statute or ordinance invalid); § 12-22-90(b), Ala. Code 1975 (an appeal from an order granting a petition for a writ of habeas corpus); § 12-22-91, Ala. Code 1975 (an appeal when an act of the legislature under which an indictment or information is proferred is held by a lower court to be unconstitutional); and by Rule 15.7, Ala. R. Crim. P. (providing that appeals may be taken from certain pretrial orders).

justice." (Emphasis omitted.)  This Court in Ex parte Nice concluded that the Court of Criminal Appeals was presented with exceptional circumstances justifying its issuance of a writ of mandamus where the trial court had granted a new trial based solely on its belief that a witness's testimony was "dubious," which, the Court held, amounted to a usurpation of power.  This Court cautioned, however, that "[o]ur holding that mandamus is appropriate ... is not an invitation to the State to invoke supervisory writs to seek review of lower court rulings which are adverse.  We state again that only the rarest of circumstances merit intervention by mandamus."  407 So. 2d at 882 (emphasis omitted).

The threshold issue for our review in this case is whether the State has presented this Court with rare and/or exceptional circumstances justifying the issuance of a writ directing the trial court to set aside its order granting Ellis's motion for a new trial.  We conclude that it has not. It is well settled that

> "[i]n cases such as this one, where the court grants a motion for new trial for grounds other than, or in addition to, a finding that the verdict is against the great weight or preponderance of the evidence, our review is limited:

"'It is well established that a ruling on a motion for a new trial rests within the sound discretion of the trial judge. The exercise of that discretion carries with it a presumption of correctness, which will not be disturbed by this Court unless some legal right is abused and the record plainly and palpably shows the trial judge to be in error.'

"Kane v. Edward J. Woerner & Sons, Inc., 543 So. 2d 693, 694 (Ala. 1989) (citation omitted). See also, Land & Assoc., Inc. v. Simmons, 562 So. 2d 140, 148 (Ala. 1989)."

Curtis v. Faulkner Univ., 575 So. 2d 1064, 1065 (Ala. 1991).

Being mindful of the presumption of correctness that attaches to a trial court's ruling on a motion for a new trial, we quote in its entirety the trial court's May 17, 2013, order, which is clearly the product of careful thought and consideration:

"Prior to the hearing [on Ellis's motion for a new trial,] this court on March 27, 2013, entered an order for the State to determine if there are any interviews or statements taken by law enforcement regarding the investigation and to provide the court copies under seal [of] the following:

"1. Copy of a transcript of any interview or statement that was recorded as a part of law enforcement's investigation into this case that has not previously been disclosed.

"2. Copy of all notes, files or summaries of any interviews or statements taken by

11

law enforcement that has not been previously disclosed.

"3. Any exculpatory or impeachable evidence, statements or interviews not previously produced.

"In response to said Order the State produced in camera the following:

"A. Copies of transcript of the March 27, 2012, and May 23, 2012, recorded interviews with victim M.B.

"B. Copy of the transcript of the interview with witness M.M. made May 15, 2012.

"C. A CD which contained interviews of M.B., M.M. and J.H.

"This court made a finding that the two (2) statements of M.B. and the statement of J.H. contained exculpatory and/or impeachable evidence that should have been disclosed and ordered that the State provide [Ellis] with copies prior to the hearing on the motion for new trial.

"Prior to the hearing the State provided additional information in camera for the court to review. The information provided included a case summary by Investigator Brian McLendon, an affidavit by Lee Barnes of the Troy Police Department seeking a search warrant for telephone records of S.L.F. and other documents.

"[Charges and Convictions]

"[Ellis] was indicted by a Pike County Grand Jury in Count I of rape in the first degree regarding victim Q.C., Count II of rape in the first degree regarding victim M.B. and burglary in the 2d degree regarding the residence of M.B.

12

"A jury returned verdicts of guilty on all three (3) offenses. [Ellis] was sentenced to eighty five (85) years in prison on each rape offense and twenty (20) years on the burglary 2d degree. The sentences were to run concurrently with each other.

"[Applicable Law]

"The suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Brady v Maryland, 373 U.S. 83, 83 S.Ct. 1994, 10 L. Ed. 2d 215 (1963). The Supreme Court in Brady stated that the purpose of sanctions for suppression of favorable evidence is not to punish society for misdeeds of a prosecutor, but instead is the avoidance of an unfair trial to an accused. Society not only wins when the guilty are convicted but when criminal trials are fair; our system of administration of justice suffers when any accused is treated unfairly. The court in Brady made reference to an inscription on the walls of the Department of Justice which reads, 'The United States wins its point when Justice is done its citizens in the courts.'

"The U.S. Supreme Court in Giglio v. [United States], 405 U.S. 150, 92 S. Ct.763, 31 L. Ed. 2d 104 (1972) rejected any distinction between impeachment and exculpatory evidence and held that impeachment evidence as well as exculpatory evidence falls within the 'Brady Rule.'

"Evidence is favorable to an accused if such evidence, if disclosed and used effectively, may make the difference between conviction and acquittal. Nape v. Illinois, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959).

"A jury's estimate of the truthfulness and reliability of a given witness may well be

13

determinative of guilt or innocence and it is upon subtle factors that a defendant's life or liberty may be deprived. United States v. Bagley, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). When the reliability of a witness may well determine guilt or innocence, nondisclosure of evidence affecting credibility falls within the 'Brady Rule.' Giglio supra; Bagley supra.

"The prosecution has a duty to disclose impeachment and exculpatory (favorable) evidence even if there has been no request by the accused. [United States] v. Agurs, 427 U.S. 97, 96 S. Ct. 2392; 49 L. Ed. 2d 342 (1976).

"The 'Brady Rule' encompasses evidence 'Known only to the police and not to the prosecutor.' Kyles v. Whitley. 514 U.S. 419, 115. S. Ct. 1555, 131 L. Ed. 2d 490 1995).

"The U.S. Supreme Court held in Kyles that a Brady violation occurred by the failure to disclose that a witness had tentatively picked at a lineup someone other than the defendant as the killer and was told by law enforcement that the wrong person was identified.

"Brady requires the prosecution to produce evidence that someone else may have committed a crime. Nicks v. State, 783 So. 2d 895 (Ala. Crim. App. 1999), quoting Jarrell v. Balkcom, 735 F.2d. 1242, (11th Cir. 1984). Nondisclosure of exculpatory evidence bearing on the identity of the perpetrator has often led courts to hold that the principles of Brady were violated. See Patton v State, 530 So. 2d 886 (Ala. Crim. App. 1988). A telephone call from an alleged eyewitness who implicated someone other than the accused that was not disclosed is a Brady violation. Hall v. State, 625 So. 2d 1162 (Ala. Crim. App. 1993). Pretrial statements of witnesses implicating someone else other than accused or containing details inconsistent with witnesses' trial

testimony would be favorable and a <u>Brady</u> violation. <u>Jefferson v. State</u>, 645 So. 2d 313 (Ala. Crim. App. 1994); <u>Martin v State</u>, 839 So. 2d 665 (Ala. Crim. App. 2001).

"Failure of prosecution to disclose a 'be on the lookout' (BOLO) containing a witness's description of the perpetrators violated the prosecution's obligation under <u>Brady</u> to inform defendant of impeachment evidence, where the BOLO description differed significantly from the Defendant's actual appearance. <u>Martin v. State</u>, 839 So. 2d 665 (Ala. Crim. App. 2001).

"To prove a <u>Brady</u> violation, a defendant must show:

"1. That the prosecution suppressed evidence.

"2. That the evidence was of a character favorable to the defense.

"3. That the evidence was material (or the defendant was prejudiced).

"<u>Jefferson v. State</u>, 645 So. 2d 313 (Ala. Crim. App. 1994); <u>Ex parte Cannon</u>, 578 So. 2d 1089 (Ala. 1991).

"For a <u>Brady</u> violation, the suppression of evidence need not have been made knowingly or negligently by the government. <u>[United States] v. Pelisamen</u>, 641 F.3d 399 (9th Cir. 2011).

"In determining whether the suppressed evidence was material for a <u>Brady</u> violation, the court shall consider the cumulative effect of all suppressed evidence, and shall not consider each item of evidence individually. <u>Kyles v. Whitley</u>, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

"Evidence is material as to the 'Brady Rule' if there is a reasonable probability that had the evidence been disclosed to the defense, the results of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome. [United States] v. Baxley, 473 U.S. 667, 682, 105 S. Ct. 3375, 3383, 87 L. Ed. 2d 481 (1985).

"[Analysis]

"The two (2) recorded interviews with M.B. that were not disclosed have inconsistencies and are inconsistent with certain trial testimony of M.B. In one recorded interview M.B. stated that her roommate had been gone about twenty (20) minutes before the alleged rape. In the other interview M.B. stated the roommate had been gone about an hour and thirty (30) minutes. M.B. in one statement says her telephone was in the bathroom and in the other she says the telephone was in the kitchen at the time of the rape. M.B. gave inconsistent testimony as to the type of clothes the [rapist] was wearing. M.B. said in the statement of March 27, 2012, that the rape lasted like four (4) or five (5) minutes and this would be inconsistent with the time line which established the truck of [Ellis] entered the mobile home park at 4:41 p.m. and drove by the office at 4:46 p.m. M.B. did not tell about her and J.H. (boyfriend) having sex shortly prior to the alleged rape. At trial M.B. testified in the State's case-in-chief that she was sick and feeling bad on the day of the alleged rape. M.B. did not testify on direct about having sex with J.H. a couple hours prior to the alleged rape. M.B. did testify that she and J.H. had sex when called as an adverse witness by the defense. Defense counsel only found out about the fact that M.B. had sex with boyfriend at a bench side conference, just prior to the State resting its case and after M.B. had testified. M.B. in the March 27, 2012, statement said she did not see the penis of the rapist. She said she closed her eyes. However at trial M.B. testified that

16

she could see he had on a condom and could see the erect penis. In the March 27, 2012, statement M.B. when asked about the rapist she said, 'I was really scared to look at him in the face'; however, at trial M.B. testified she would not forget the eyes of the rapist. At trial M.B. testified she was bent out with her legs straight at the time of the rape; however, in one of the nondisclosed statements she said her knees were bent the whole time of the rape.

"K.H., the roommate, testified at trial that she and M.B.'s mother left the hospital and went to the mobile home at about 8:00 p.m. and cleaned up the blood. In the recorded statement she said they went to the mobile home about 10:00 p.m.

"J.H., the boyfriend of M.B., gave a recorded interview to law enforcement, which was not disclosed to defense counsel. J.H. was not called as a witness at trial, and defense counsel was not aware that J.H. was the boyfriend of M.B. until M.B. was called as an adverse witness. J.H. in his recorded interview stated that he and M.B. did not have sexual intercourse the day of the rape. J.H. stated they were together and then he had to go to a baseball meeting either at 4 or 4:30 p.m. and after the meeting, which lasted no more than five (5) minutes, he called M.B. and she was on the way to the hospital. The evidence would have been useful to attack the time line of 4:41 p.m. to 4:46 p.m.

"The text messages and call log of M.B. which was produced in camera notes that at 4:45 p.m. K.H. sent a text message to M.B. that stated 'How are you feeling?' M.B. responded at 4:45 p.m. 'terrible about to sit in the tub.' M.B. has provided information in the statements that she was about to take a bath when she heard a knock at the door and the rape occurred. This evidence is exculpatory and would be useful for impeachment purposes, specifically if the rape had not occurred at 4:45 p.m. and [Ellis's] truck was on the video passing the office at 4:46 p.m., then the

rape had to have occurred between 4:45 p.m. and 4:46 p.m.

"Additionally, the State did not disclose the affidavit of Lee Barnes of the Troy Police Department which was utilized to obtain a search warrant for cellular telephone records of a suspect other than [Ellis], namely [S.L.F.]. The affidavit stated the investigation had led to the suspect, S.L.F., and that the victim had made a tentative identification of S.L.F. through a photographic lineup. Additionally the victim's mother searched MySpace [social-media] records and located the suspect with a picture and showed it to M.B. and M.B. became visibly upset. An artist developed a composite sketch of the perpetrator with the assistance of the victim and a person independently identified S.L.F. as the person depicted in the composite sketch. This information is obviously exculpatory and was not disclosed and would be material for a Brady violation. The information would further be useful for impeachment purposes as it appears law enforcement ruled out said suspect. The fact that the victim wrongfully identified another person would be material.

"[Findings]

"This court is aware that there is not a constitutional right to discovery in a criminal case. Discovery is governed by Rule 16, [Ala. R. Crim. P.] -- the standing discovery order of this Circuit that ordered the State to comply with Rule 16, and to provide any exculpatory or impeachable evidence pursuant to Brady.

"Suppression by the prosecution of evidence favorable to the defendant violates due process where the evidence is material to guilt. The truthfulness or reliability of a witness's testimony may well be determination of guilt. Evidence favorable to the defendant which would tend to exculpate him helps shape a trial and bears heavily on the defendant.

18

"This court in determining a materiality inquiry under Brady is not to consider whether, after discounting the exculpatory [evidence] in light of the undisclosed evidence, the remaining evidence would be sufficient to support the jury's conclusion. Rather, the question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine the confidence in the verdict. Strickler v. Greene, 527 U.S. 263, 290, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999).

"This court is mindful of the impact granting a new trial may have on the victims; however this court is bound by the facts and applicable law in this matter. The court must weigh and consider the nondisclosed evidence and determine if evidence was suppressed, whether the suppressed evidence would be favorable to the defense, and whether the evidence was material or, stated otherwise, whether there is a reasonable probability the nondisclosed evidence undermined the verdicts.

"This court finds as follows:

"1. The evidence, including the statements of M.B., J.H., K.H., that victim, M.B., identified another person in a photo lineup, that the time-line log shows that M.B. was texting at 4:45 p.m. that she was about to get in the tub and her statement that she had not gotten in the tub prior to the rape was suppressed by the State and the evidence is exculpatory and impeachable.

"2. The court further finds that, since there was no forensic evidence or physical evidence tying [Ellis] to the rapes and burglary other than witness testimony, the credibility, truthfulness, and reliability of the testimony of such witnesses may well

19

have been a determining factor of guilt. The court finds the suppressed evidence is material and if the evidence had not been suppressed that there is a 'reasonable probability' that the results of the proceeding would have been different and a reasonable probability is sufficient to undermine the confidence in the outcome.

"3. Much of the suppressed/nondisclosed evidence would have provided the defense with an opportunity to impeach the credibility of the witnesses and the credibility [of the] investigation. Portions of the suppressed evidence would have tended to exculpate [Ellis]. Such evidence would include the fact that M.B. had identified another person in a photo lineup, J.H.'s testimony about calls to M.B. which could attack the time line, and the text messages and call log of M.B. showing text at 4:45 p.m.

"4. That exculpatory and impeach[ment] evidence was suppressed, that the suppressed evidence was favorable to the defense, and that the suppressed evidence was material and there is a reasonable probability that nondisclosure of the favorable evidence could have undermined the confidence of the verdicts.

"5. That the suppressed evidence along with the fact that the mother of M.B. cleaned up the blood from the scene, that M.B. and J.H. deliberately deleted text messages while M.B. was headed to the hospital and the fact that M.B. initially told the doctor she fell on something (instead of being raped); the fact that M.B. was not truthful and candid on direct about her actions prior the alleged rape, all that

cumulatively would have led the court to find that [Ellis] is entitled to a new trial based on the suppression of evidence in violation of Brady and the standing discovery order of this court.

"[Conclusion]

"It is ORDERED that [Ellis's] motion for a new trial on the two (2) convictions of rape in the first degree and burglary in the first degree is granted. The convictions are hereby set aside and vacated due to Brady violations.

"The court further finds that the suppression or nondisclosure was not intentional or malicious on the part of the State; however, this court continues to have much concern regarding the State's search for the truth as the evidence disclosed in camera makes reference to other interviews and statements-- specifically Q.C., the other rape victim, which have never been provided in camera to the court as specifically ordered by this court.

"Any other relief sought by [Ellis] on other grounds will not be addressed as [it is] moot since the court has granted the motion for new trials based on the 'Brady Rule' violations and violations of the standing discovery order of the 12th Judicial Circuit.

"It is ORDERED that a scheduling conference is scheduled for the 1st day August, 2013, to address any pending matters and to set a date for a new trial."

The State argues in its petition for a writ of mandamus that the trial court exceeded its discretion and its judicial authority in granting Ellis a new trial because, it says, the

trial court improperly combed the prosecutor's files and incorrectly and improperly analyzed the contents in those files. In support of its argument, the State provides an item-by-item analysis of each piece of evidence considered by the trial court, much of which the State claims has no bearing on the motion for a new trial. However, it is well settled that the evidence the State failed to disclose to Ellis must be considered collectively, not item-by-item, in determining whether the "materiality" requirement of a Brady v. Maryland, 373 U.S. 83 (1963), violation has been satisfied. Kyles v. Whitley, 514 U.S. 419 (1995). The collective effect of the nondisclosed evidence in this case -- the fact that M.B. had identified S.L.F. in a police photographic lineup as being the perpetrator; the fact that M.B.'s prior statements during the tape-recorded interviews were inconsistent with her testimony at trial regarding the time line of events and how those events occurred; the fact that J.H., M.B.'s boyfriend, stated in his recorded interview that he had not had sexual relations with M.B. on the day of the alleged rape; the fact that J.H.'s statements in the interview regarding his telephone calls to M.B. could have been used to attack the time line of 4:41 p.m.

22

1121390

to 4:46 p.m.; and the fact that K.H.'s testimony was inconsistent regarding the time she and M.B.'s mother went to M.B.'s mobile home to clean up the blood -- is to support the trial court's conclusion that there was a "reasonable probability" that the State's nondisclosure of this evidence would have resulted in a different verdict. The trial court noted that "since there was no forensic evidence or physical evidence tying [Ellis] to the rapes and burglary other than witness testimony, the credibility, truthfulness, and reliability of the testimony of such witnesses may well have been a determining factor of guilt." "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles, 514 U.S. at 434. "[A] constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678 (1985). We find no error in the trial court's order analyzing the collective effect of the nondisclosed evidence

23

and determining that the "materiality" requirement of a <u>Brady</u> violation had been satisfied. <u>Kyles</u>.

The State also argues that the trial court exceeded its discretion in granting a new trial because, it says, Ellis never laid the proper predicate to compel the State to disclose the statements of M.B., K.H., or J.H., as required by <u>Ex parte Pate</u>, 415 So. 2d 1140 (Ala. 1981), and <u>Ex parte Key</u>, 890 So. 2d 1056 (Ala. 2003). More specifically, the State asserts that <u>Ex parte Pate</u> and <u>Ex parte Key</u> required Ellis to make specific requests <u>during</u> the trial for any pretrial statements made by any witnesses during the course of the trial. We find <u>Key</u> and <u>Pate</u> to be inapplicable to the facts of this case.

In <u>Ex parte Pate</u>, this Court granted certiorari to review the question "whether or when the defendant in a criminal case is entitled to inspection of a statement of a prosecution witness <u>for the purpose of cross-examining or impeaching the witness</u>." 415 So. 2d at 1140-41 (emphasis added). <u>Ex parte Pate</u> confirmed the general rule that an accused is not entitled to discover statements of government witnesses before trial. In <u>Ex parte Key</u>, this Court held that "[o]nce a

24

prosecution witness has testified on direct examination, however, a defendant, upon laying a proper predicate, is entitled to inspect a prior statement of the witness for the purpose of cross-examining or impeaching the witness." 890 So. 2d at 1064. Ex parte Key established a two-step process for determining when a trial court should conduct an in camera inspection. A defendant must first lay a proper predicate for an in camera inspection by providing evidence that a statement exists, then the trial court determines, during the in camera inspection, "(1) whether the witness's statement differed in any respect from the witness's testimony at trial, and (2) whether the statement requested was of such a nature that without it the defendant's trial would be fundamentally unfair." Ex parte Key, 890 So. 2d at 1064.

Ellis's case presents a different fact scenario: Ellis was not seeking during the trial to inspect a prior statement of a witness for the purpose of cross-examining or impeaching the witness. In other words, Ellis learned for the first time during the trial at a sidebar conference that J.H. and M.B. had had sexual relations just hours before the alleged rape; Ellis was not aware that J.H. had been interviewed by law

enforcement. Because J.H. did not testify at trial, Ellis could not have requested during the trial to use J.H.'s statement for cross-examination or impeachment purposes. It was not until after the verdict that Ellis, during further investigation, learned that J.H. had been interviewed by law enforcement. At this point, Ellis filed a motion for a new trial, alleging that the State had withheld crucial evidence in violation of Brady v. Maryland:

"That during the course of trial at sidebar, the State revealed that the alleged victim, M.B., had entered into sexual relations with her boyfriend at the time of the alleged offense the afternoon she claimed she had been raped. M.B. had already given testimony at this point of the trial that she had [gone] to school and then had come home without mentioning she had entered into sexual relations with her boyfriend, herein referred to as J.H. The State had not disclosed this information prior to trial and therefore no investigation of the same was conducted by the defense.

"Since the trial, the defense has through further investigation discovered that J.H. has disclosed that he had sex with M.B. the day of the alleged rape. J.H. has further stated that yes they did have sex[;] however[,] when asked if there were any 'toys' he stated no but only after a significant pause. J.H. has further disclosed that there was a police interview/interrogations of him and he was interviewed by Brian McClendon of the Troy P.D. [Police Department] and another detective that he did not know. ... J.H. further disclosed he had only one formal interview at the P.D. and that he was there for quite a long time. After that he only spoke with

26

Det. McClendon by phone.  J.H. also remembers the interview being recorded. J.H. stated that he did in fact say he did not believe that M.B. had been raped during the P.D. interview but has since come to believe that she had.  When ask[ed] ... why he had originally not believed her J.H. stated there were little things going on in their relationship that made him doubt her sometimes and primarily he did not believe her because the Police led him through their questioning of him to believe that they doubted her story as well.  Since the interview of J.H. was not disclosed to the defense prior to trial, all of the aforementioned information was unavailable to the defense prior to trial and therefore no further investigation on these issues were investigated at the time.  The State never called J.H. at trial.

"....

"Trial counsel was not provided with crucial evidence in violation of Brady v. Maryland ....

"Further, due to the State's failure to disclose information regarding M.B.'s sexual conduct the day of the alleged rape, the defense was further unable to properly cross-examine the State's expert on other possible hypotheses for the alleged injuries nor was the defense afforded the opportunity to evaluate the need for independent defense witnesses to refute the State's experts."

The trial court thereafter ordered the State to determine if there were any interviews or statements taken by law enforcement regarding the investigation that had not been previously disclosed and to provide the court with copies under seal of all such interviews or statements.  See Duncan v. State, 575 So. 2d 1198 (Ala. Crim. App. 1990) (holding that

27

the knowledge of law-enforcement agents regarding favorable evidence is imputed to the prosecutor). The State thereafter produced in camera the interviews of M.B., J.H., and K.H. The State also provided additional in camera information for the court's review, including a search warrant for telephone records of S.L.F., another person M.B. had identified in a police photographic lineup as being the perpetrator. After reviewing the State's evidence, the trial court concluded that some of the evidence should have been disclosed, and it ordered the State to provide Ellis with copies of that evidence before the hearing on the motion for a new trial.

Following the hearing, the trial court entered its order, granting Ellis's motion for a new trial based on the State's failure to turn over evidence in violation of Rule 16, Ala. R. Crim. P., and in violation of Brady v. Maryland. See Ex parte Brown, 548 So. 2d 993, 994 (Ala. 1989)("We have further held that exculpatory evidence, regardless of its trustworthiness or admissibility, should be disclosed, and, if it is not disclosed, that defendant's motion for a new trial should be granted."). Moreover, pursuant to Rule 16, Ala. R. Crim. P., the trial court is authorized to inspect the State's evidence

1121390

at any time during the proceedings when it is brought to the court's attention that a party has failed to comply with the court's standing discovery order. Rule 16.5, Ala. R. Crim. P., states:

> "If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule or with an order issued pursuant to this rule, the court may order such party to permit the discovery or inspection; may grant a continuance if requested by the aggrieved party; may prohibit the party from introducing evidence not disclosed; or may enter such other order as the court deems just under the circumstances. The court may specify the time, place, and manner of making the discovery and inspection and may prescribe such terms and conditions as are just."

(Emphasis added.)

Because the holdings of Ex parte Pate and Ex parte Key do not apply under the facts of this case, and because the trial court was authorized to order the State to provide the court with copies under seal of all interviews or statements taken by law enforcement during its investigation that had not been previously disclosed, the State has failed to demonstrate that the trial court exceeded its discretion in this regard. Stated differently, under the circumstances presented, the trial court's method of handling the situation was proper.

Lastly, the State argues that the trial court exceeded its discretion in entering its order granting a new trial with regard to the rape charge involving Q.C. because, it says, Ellis made no allegation in his motion for a new trial regarding a discovery violation in the case in which Q.C. is the named victim nor did the trial court make any findings as to any alleged discovery violation pertaining to that case. In support of its argument, the State cites Dunn v. United States, 284 U.S. 390, 393 (1932)("[E]ach count of an indictment is regarded as if it was a separate indictment."), and Murphy v. State, 108 So. 3d 531, 546 (Ala. Crim. App. 2012)("'A jury verdict on each count [of a multi-count indictment] is independent; a verdict of either conviction or acquittal of one has no effect or bearing on another.'" (quoting Hammonds v. State, 7 So. 3d 1055, 1061 (Ala. 2008))). Specifically, the State asserts that "just because the trial court is erroneously convinced that a new trial is appropriate in one count of a multi-count indictment does not automatically give rise to the summary granting of a new trial in any other count of the same indictment." The State's argument in this regard is without merit. It is irrelevant

that Ellis made no allegation in his motion for a new trial of any discovery violation regarding Q.C., because Ellis was concerned only with the fact that the State had failed to disclose the recorded interview between J.H. and law enforcement. As previously stated, Ellis alerted the trial court in his motion for a new trial of the alleged Brady violation. The court at that point ordered the State to provide copies under seal of all notes, files, or summaries of any interviews or statements taken by law enforcement that had not been previously disclosed during the course of the investigation; this information would include any information pertaining to Q.C. as well as to M.B. More importantly, however, is the fact that the trial court clearly stated in its order that the State had violated the discovery order regarding information pertaining to Q.C.:

> "The court further finds that the suppression or nondisclosure was not intentional or malicious on the part of the State; however, this court continues to have much concern regarding the State's search for the truth as the evidence disclosed in camera makes reference to other interviews and statements specifically [regarding] Q.C., the other rape victim, which have never been provided in camera to the court as specifically ordered by this court.
>
> "Any other relief sought by [Ellis] on other grounds will not be addressed as they are moot since

> this court has granted the motion for new trials based on the 'Brady <u>Rule</u>' violations and violations of the standing discovery order of the 12th Judicial Circuit."

(Emphasis added.) Rule 16, Ala. R. Crim. P., which provides for discovery in criminal cases, expressly authorizes a trial court to impose sanctions against a party that fails to comply with a discovery order. See Rule 16.5, quoted supra. "<u>Brady v. Maryland</u> ..., requires the government to disclose exculpatory evidence or risk sanctions." <u>State v. Hall</u>, 991 So. 2d 775, 778 (Ala. Crim. App. 2007). "The imposition of sanctions upon noncompliance with a court's discovery order is within the sound discretion of the court." <u>McCrory v. State</u>, 505 So. 2d 1272, 1279 (Ala. Crim. App. 1986). "[S]anctions imposed for a <u>Brady</u> violation are reviewed to see if the trial court exceeded its discretion." <u>Ex parte Hall</u>, 991 So. 2d 782, 784-84 (Ala. 2008) (citing <u>State v. Moore</u>, 969 So. 2d 169, 181-82 (Ala. Crim. App. 2006) (recognizing that dismissal of an indictment is an available sanction for a <u>Brady</u> violation under the supervisory powers granted trial courts by Rule 16.5, Ala. R. Crim. P.)). Because the State violated the trial court's discovery order by failing to produce <u>any</u> and <u>all</u> interviews and statements regarding Q.C., we find no error

in the trial court's ruling granting Ellis's motion for a new trial as to count one of the indictment charging Ellis with rape in the first degree of Q.C. The State has simply failed to provide this Court with any caselaw demonstrating error on the part of a trial court granting a new trial based on a party's failure to comply with the discovery provisions of Rule 16, Ala. R. Crim. P. It is well settled that the "[f]ailure to comply with [Rule 16] is viewed with disfavor and is condemned." Smith v. State, 698 So. 2d 189, 206 (Ala. Crim. App. 1996).

## IV. Conclusion

Based on the foregoing, the State has failed to present this Court with exceptional circumstances justifying the issuance of a writ directing the trial court to set aside its order granting Ellis's motion for a new trial. Unlike this Court's holding in Ex parte Nice that the Court of Criminal Appeals was justified in finding exceptional circumstances justifying the issuance of a writ where the trial judge had granted a new trial solely because he felt the witness's testimony was "dubious," which, we said, amounted to a usurpation of power, there are no circumstances, much less

33

exceptional circumstances, presented in this case justifying a writ directing the trial court to vacate its order granting Ellis a new trial. The trial court in this case was clothed with the discretion to grant a new trial and, in fact, had a duty to do so upon its finding of a Brady violation, Ex parte Brown; the trial court is also clothed with discretion in imposing the appropriate sanctions, i.e., the grant of a new trial, based on its findings of discovery violations. Ex parte Moore, supra. Accordingly, the State has failed to demonstrate a clear legal right to the order sought, Ex parte Sharp, and its petition is due to be denied. See also State v. Waters, 453 So. 2d 1067, 1067-68 (Ala. Crim. App. 1984), holding that "[t]he petition for writ of mandamus seeking to require a Montgomery Circuit Court judge to vacate and hold for naught his order granting a new trial is hereby denied on authority of Ex parte Hooper, 453 So. 2d 1066 (Ala. 1984), holding that mandamus will not lie to compel the trial court's exercise of discretion in a particular manner."

PETITION DENIED.

Moore, C.J., and Stuart, Parker, Murdock, Shaw, Main, Wise, and Bryan, JJ., concur.