WELCH, Judge.
*167 The appellant, Gregory R. Wynn, appeals the circuit court's dismissal of his petition for postconviction relief filed pursuant to Rule 32, Ala. R. Crim. P.
In August 1999, Wynn was convicted of murdering Denise Bliss during the course of a robbery and a burglary, offenses defined as capital by §§ 13A-5-40(a)(2) and 13A-5-40(a)(4), Ala. Code 1975. The jury unanimously recommended that Wynn be sentenced to death. The circuit court followed the jury's recommendation and sentenced Wynn to death. On direct appeal, this Court remanded the case to the circuit court for that court to vacate two of Wynn's capital-murder convictions on double-jeopardy grounds and to correct its sentencing order. On return to remand, we affirmed Wynn's convictions and sentence. See Wynn v. State, 804 So.2d 1122 (Ala.Crim.App.2000). This Court issued its certificate of judgment on June 1, 2001.
In March 2003, Wynn filed a timely petition for postconviction relief in the Calhoun Circuit Court. Wynn filed amendments to that petition in August 2003, September 2006, October 2012, and twice in April 2014.
In 2005, while Wynn's postconviction petition was pending in the Calhoun Circuit Court, the United States Supreme Court released its decision in Roper v. Simmons, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). The Supreme Court held that a sentence of death for a juvenile who was under the age of 18 when he or she committed the offense was unconstitutional. Wynn was 17 years of age at the time of the offense; therefore, in accordance with the Supreme Court's decision in Roper, the circuit court vacated Wynn's death sentence and resentenced Wynn to a mandatory term of life imprisonment without the possibility of parole.
In May 2013, the circuit court summarily dismissed some of Wynn's postconviction claims. (CR. 1738-54.) An evidentiary hearing was held on the remaining claims in August 2014. In May 2015, the circuit court dismissed Wynn's postconviction petition in a 24-page order. (CR. 1738-54.) This appeal followed.
At Wynn's trial, the State's evidence showed that in the early morning hours of April 9, 1998, an employee of the Hardee's fast-food restaurant off McClellen Boulevard in Anniston opened the restaurant, discovered a pool of blood on the floor, and immediately telephoned police. Police discovered the body of Denise Bliss in the walk-in refrigerator. The forensic pathologist testified that Bliss had been severely beaten, that she had many defensive wounds, that 40 or more blows had been inflicted to her body, and that she died of multiple blunt-force trauma to her head and neck. Testimony established that Bliss had been beaten with a window washing device, commonly known as a squeegee, and a metal pipe that the restaurant used to compact its trash. Approximately $1,100 in currency, checks, and coins was missing from the restaurant.
The State's evidence presented against Wynn was compelling.[1] There was testimony that Wynn had previously worked at Hardee's and that he had been fired by Bliss about two weeks before the murder. Two witnesses saw a black male very near Hardee's shortly before 10:00 p.m. on the night of the murder. At trial, one of those witnesses identified this male as Wynn. Randy Smith, a friend of Wynn's, testified that Wynn called him on the evening of April 8, 1998, and asked him for a ride to *168 Hardee's because, he told Smith, he was going to rob the place and get some money. However, Smith said, he could not get his parents' car that evening.
Seven people testified that Wynn confessed to them that he robbed and killed a woman at the Hardee's restaurant. Brandy Mancil testified that in April 1998 she was living in a trailer park, that she was at Brandy Yott's trailer on April 8, 1998, and that Wynn was with them. Mancil said that Wynn left the trailer at around 10:00 p.m. that evening on his bicycle but that he came back to the trailer later that night. Wynn wanted to talk to her, she said, and he told her that he had "robbed Hardee's" and he showed her money that was in a "blue like bank bag." A little later, she said, he told her and Yott that he had killed a woman. Mancil testified to what Wynn told her:
"He said that he walked into Hardee's and that he was going to rob them but he changed his mind so he walked out. And then he got halfway towards like Fun Fever [an arcade] and he turned around and he said, 'F--- it,' that he was going to go ahead and do it. And he went in and he hid behind the bathroom doors in the women's bathroom because I guess he knew they checked it before it closed. When the lady opened the door she didn't see him so I guess she went ahead and locked up. And he went in the back. And I can't remember, it was some kind of iron pole off of like a garbage disposal or something and he said that he had beat her with it. And then he -- he didn't -- he told her to give him all the money first and he said he wasn't going to kill her until she said, 'Greg, please don't kill me. I won't call the police.' And then after she said that he got scared and panicked I guess and just started beating her with that pole. And then he told me -- he said he didn't know if he had killed her or not. So if he didn't kill her he [dragged] her in the freezer and she would freeze to death before anyone found her the next day."
(Trial R. 1107-08.)
Yott testified that in the early morning hours of April 9, 1998, Wynn came to the trailer where she was living to see her roommate Brandy Mancil. Yott said that she overheard Wynn tell Mancil that he had robbed somebody and "wanted to know if we wanted to go get a room." (Trial R. 1209.) Yott said that they went to a motel in Oxford, that Wynn paid for the room, and that Wynn gave her money to get beer. As Wynn was talking to them, she said, he told her and Mancil that he had "killed a woman" at Hardee's and that he had beaten her with a "stick or something." (Trial R. 1213.) The next morning, she said, they walked over to a mall and Wynn paid for all the purchases that they made that day.
Anthony Roper testified that he is a general manager for Hardee's. He testified that for each nightly deposit a number is recorded from the highest bill denomination that is deposited. The reason, he said, "is in case the deposit gets lost or if it's stolen it [is] something the police could use to find it." (Trial R. 832.) Reginald Elston testified that the day Wynn was arrested he was at Brandy's trailer with Wynn and Wynn asked him to give him change for a hundred dollar bill. That bill was traced to the daily deposit that had been prepared by Bliss on the night of the murder.
A search was conducted of Wynn's house, which was approximately one mile from Hardee's. On April 11, 1998, police discovered torn checks made out to Hardee's and dated the day of the robbery/murder. Bloody clothing was also discovered at Wynn's house.
*169 Standard of Review
Wynn appeals the circuit court's denial of his petition for postconviction relief attacking his capital-murder conviction. Wynn initiated the proceedings and, according to Rule 32.3, Ala. R. Crim. P., bears the sole burden of pleading and proving that he is entitled to relief. Rule 32.3 states:
"The petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief. The state shall have the burden of pleading any ground of preclusion, but once a ground of preclusion has been pleaded, the petitioner shall have the burden of disproving its existence by a preponderance of the evidence."
"The standard of review this Court uses in evaluating the rulings made by the trial court is whether the trial court abused its discretion." Hunt v. State, 940 So.2d 1041, 1049 (Ala.Crim.App.2005).
With these principles in mind, we review the issues raised by Wynn in his brief to this Court.
I.
Wynn first argues that the circuit court erred in refusing to allow him to amend his postconviction petition to add a new Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), claim 45 days before the scheduled evidentiary hearing. Specifically, Wynn argues that, according to the Alabama Supreme Court's decision in Ex parte Rhone, 900 So.2d 455 (Ala.2004), the only grounds that will support the denial of a motion to amend a postconviction petition are "actual prejudice" or "undue delay." Wynn's proposed amendment was 56 pages in length and argued that exculpatory evidence, in the form of witness statements, had not been disclosed for several of the state witnesses. (CR. 1989-2045.)[2]
In Ex parte Rhone, the appellant filed a pro se postconviction petition alleging that his trial counsel was ineffective. Two weeks later Rhone sought to amend that petition to add 10 additional allegations of ineffective-assistance-of-counsel. The circuit court entered no ruling on Rhone's motion to amend, and subsequently denied Rhone's petition. This Court affirmed the circuit court's actions on appeal. See Rhone v. State, 900 So.2d 443 (Ala.Crim.App.2004). The Alabama Supreme Court, in reversing this Court's decision, stated the following concerning amendments to postconviction petitions:
"This Court's statements concerning the amendment of Rule 32 petitions are supported by the plain language of Rule 32.7, Ala. R. Crim. P. Subsection (b) of that rule unambiguously grants discretion to the trial court, providing that '[a]mendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.' (Emphasis added [in Ex parte Rhone, 900 So.2d 443 (Ala.2004) ].) Guiding the exercise of that discretion is the mandate of subsection (d) that 'leave to amend shall be freely granted.' (Emphasis added [in Ex parte Rhone ].) However, because the trial court has discretion to refuse an amendment to a Rule 32 petition, we must consider the nature of the factors that would provide a proper basis for such a refusal.
"In Ex parte Allen, [825 So.2d 271 (Ala.2002),] this Court cited *170 Talley v. State, 802 So.2d 1106, 1107 (Ala.Crim.App.2001), in support of our statement of the principles relevant to the amendment of Rule 32 petitions. In Talley, the Court of Criminal Appeals stated:
" ' " '[A]mendments should be freely allowed and ... trial judges must be given discretion to allow or refuse amendments.... The trial judge should allow a proposed amendment if it is necessary for a full determination on the merits and if it does not unduly prejudice the opposing party or unduly delay the trial.' Record Data International, Inc. v. Nichols, 381 So.2d 1, 5 (Ala.1979) (citations omitted). 'The grant or denial of leave to amend is a matter within the sound discretion of the trial judge....' Walker v. Traughber, 351 So.2d 917 (Ala.Civ.App.1977)."
" ' Cochran v. State, 548 So.2d 1062, 1075 (Ala.Crim.App.1989).'
" 802 So.2d at 1107-08 (emphasis added [in Ex parte Rhone ] ). The statements in Talley are consistent with this Court's prior decisions, as well as with Rule 32.7. Thus, it is clear that only grounds such as actual prejudice or undue delay will support a trial court's refusal to allow, or to consider, an amendment to a Rule 32 petition."
900 So.2d at 457-58.
In explaining its earlier holding in Ex parte Rhone, the Alabama Supreme Court in Ex parte Jenkins, 972 So.2d 159 (Ala.2005), stated:
"As we held in Ex parte Rhone, [900 So.2d 455 (Ala.2004),] however, a petitioner does not have the unfettered right to file endless amendments to a Rule 32 petition. The right to amend is limited by the trial court's discretion to refuse to allow an amendment if the trial court finds that the petitioner has unduly delayed filing the amendment or that an amendment unduly prejudices the State. Such an exercise of the trial court's discretion would certainly be appropriate, for example, if, on the eve of an evidentiary hearing, a Rule 32 petitioner filed an amendment that included new claims of which the State had no prior notice and as to which it was not prepared to defend.
"We emphasize that the concepts of 'undue delay' and 'undue prejudice' as discussed in this opinion and in Ex parte Rhone apply to the trial court's management of its docket and to the petitioner's attention to his or her case.''
972 So.2d at 164.
Here, the record shows that an evidentiary hearing was originally scheduled for May 5, 2014, but was continued in April 2014 on Wynn's motion. (CR. 1817.) On April 28, 2014, Wynn filed two separate motions to amend two different claims in his postconviction petition -- Claim II(5) and Claim III(G)(1). Both motions were granted. (CR. 1909; 1911.) On April 28, 2014, Wynn also moved the Court to order Hardee's to produce certain documents in connection with the case. (CR. 1867.) The evidentiary hearing that had been rescheduled for June 10, 2014, had been continued to August 25, 2014. (CR. 1959.) On July 11, 2014, Wynn moved to amend his postconviction petition with a new Brady claim, moved to substitute eyewitness-identification expert Jeffrey Neuschatz for Jennifer Dysart, moved for production of certain materials from the Anniston Police Department, the Weaver Police Department, and the District Attorney's Office, moved for a hearing on pending motions before the August 25, 2016, evidentiary hearing, and moved for the State to comply with its earlier motion to produce Hardee's documents.
The circuit court granted Wynn's motion for a status hearing and scheduled a hearing on the pending motions for August 8, *171 2014. (CR. 2131.) At this hearing, the State objected to Wynn's late attempt to amend his postconviction petition, arguing that it had to prepare for a substantial evidentiary hearing and it had to respond to all the motions that had been filed by Wynn in July 2014. The circuit court stated that it was concerned with the proximity to the evidentiary hearing and the State's ability or inability to prepare for amended allegations when it already had to prepare for the evidentiary hearing. (R. 144-45.) Wynn had subpoenaed 27 witnesses for the evidentiary hearing.[3]
On appeal, Wynn specifically relies on this Court's decision in Broadnax v. State, 987 So.2d 631 (Ala.Crim.App.2007), and argues that he attempted to amend his petition 45 days before the evidentiary hearing and, he says, this length of time was sufficient in Broadnax to result in no undue delay in the proceedings. In Broadnax, we stated: "Nothing in the record indicate[d] that allowing the amendment would have further delayed the evidentiary hearing." 987 So.2d at 640 (emphasis added). This Court also emphasized: "It is important to note that this is not a case where the petitioner had already filed multiple amendments and was attempting to file yet another amendment." 987 So.2d at 641 (emphasis added). However, this Court did not hold that every petitioner is entitled to amend his petition when the amendment is filed 45 days before a scheduled evidentiary hearing. Each case must be assessed individually based on its unique facts.
Here, Wynn's postconviction petition had been pending for more than 11 years when Wynn sought to amend his petition a fifth time. It is clear from reviewing the record that the circuit court would have felt compelled to continue the scheduled evidentiary hearing if it had granted Wynn's fifth motion to amend his petition because of prejudice to the State's ability to defend the new claims.[4]
Alternatively, the State argues that there was no merit to the Brady claim Wynn sought to raise in his amendment; therefore, the State says, the circuit court did not err in declining to allow the amendment. This Court has held that the denial of a motion to amend a postconviction petition may be harmless depending on the issue or issues raised in the proposed amendment. See Wilson v. State, 911 So.2d 40, 46 (Ala.Crim.App.2005) ("Although the trial court erred when it denied the motion to file the third amended petition, that error was harmless. ... [e]ven if the trial court had granted the motion to amend, Wilson would not have been entitled to any relief.").
*172 As stated above, Wynn sought to amend his postconviction petition to allege a Brady violation. In Brady, the United States Supreme Court held that "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.
"A Brady [v. Maryland, 373 U.S. 83 (1963),] violation occurs where: (1) the prosecution suppresses evidence; (2) the evidence is favorable to the defendant and (3) material to the issues at trial. Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990) ; Delap v. Dugger, 890 F.2d 285 (11th Cir.1989) ; United States v. Blasco, 702 F.2d 1315, 1327 (11th Cir.), cert. denied, 464 U.S. 914, 104 S.Ct. 275, 276, 78 L.Ed.2d 256 (1983); Ex parte Kennedy, 472 So.2d 1106, 1110 (Ala.), cert. denied, 474 U.S. 975, 106 S.Ct. 340, 88 L.Ed.2d 325 (1985). The Supreme Court of the United States in United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985) (plurality opinion by Blackmun, J.), defined the standard of materiality required to show a Brady violation as follows: 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' See also Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) ; Stano v. Dugger, 901 F.2d at 899 ; Delap v. Dugger, 890 F.2d at 299 ; Coral v. State, 628 So.2d 954 (Ala.Cr.App.1992) ; Thompson v. State, 581 So.2d 1216 (Ala.Cr.App.1991), cert. denied, 502 U.S. 1030, 112 S.Ct. 868, 116 L.Ed.2d 774 (1992).
"The same standard of materiality and due process requirements apply whether the evidence is exculpatory or for impeachment purposes. United States v. Bagley; Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ; Ex parte Womack [, 435 So.2d 766 (Ala.1983) ]. 'When the "reliability of a given witness may well be determinative of guilt or innocence," nondisclosure of evidence affecting credibility falls within the general rule.' Giglio, 405 U.S. at 154, 92 S.Ct. at 766 (quoting Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959) ). In short, due process requires the prosecution to disclose material evidence, upon request by the defense, when that evidence would tend to exculpate the accused or to impeach the veracity of a critical state's witness."
Williams v. State, 710 So.2d 1276, 1296-97 (Ala.Crim.App.1996). "[I]t is well settled that the evidence the State failed to disclose to [the defendant] must be considered collectively, not item-by-item in determining whether the 'materiality' requirement of a Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), violation has been satisfied." See State v. Ellis, 165 So.3d 576, 586 (Ala.2014).
In his proposed amendment, Wynn first asserted that the State suppressed exculpatory witness statements from Michael Luckado and his daughter. At Wynn's trial, Luckado testified that he was driving past the Hardee's restaurant on the evening of April 8, 1998, at around 9:52 p.m., and saw a black male, whom he identified as Wynn, near the intersection very close to Hardee's. However, his daughter could not identify the man she saw that night. In his proposed amendment, Wynn asserted *173 that the State failed to disclose that the daughter never saw the man "head on" and that she saw only the side of his face, that the State failed to disclose that it was raining very hard that night, and that the State failed to disclose that both Luckado and his daughter said that the black male they saw was wearing a hat.
Second, Wynn sought to amend his petition to allege that the State suppressed Ira Finch's statements that, he says, suggested that the identification procedure the police used was suggestive. Finch testified at Wynn's trial that he picked up a black male from the Weaver Trailer Park and drove him to the Howard Johnson's in Oxford early in the morning of April 9, 1998. Finch could not identify the man in the photographic lineup. Nor did Finch identify the man at Wynn's trial.
Third, Wynn sought to amend his petition to assert that the State failed to disclose that Dame Dieye's identification of Wynn was suggestive because, he says, Dieye's pretrial statement shows that he was shown a photograph of Wynn before the photographic lineup was conducted. Dieye testified at Wynn's trial that he owns a men's clothing shop at Quintard Mall in Anniston and that on April 9, 1998, he opened his shop early because, he said, three black males were waiting for the shop to open. He identified one of the males as Wynn because, he said, "He knew [him] very well ... because he was my customer. He used to come shopping a lot in my store." (Trial R. 1158.)
Fourth, Wynn sought to amend his petition to allege that the State suppressed various exculpatory witness statements because, he said, numerous statements varied in some respect from the witnesses' trial testimony. This argument encompasses 29 pages of the amendment. For instance, Wynn made the following arguments:
"[Brandy] Mancil also stated during the interview that two rooms were rented at the Howard Johnson's and that 'the money' -- meaning the money taken during the Hardee's robbery -- was kept in the second room. But at trial, she said nothing about a second room."
(CR. 2005-06.)
"[Carlos] McCallum told police that Wynn said that he had worn a covering over his head. However, at trial, McCallum testified that Wynn didn't tell him whether he was wearing any kind of disguise. McCallum's statement to police was favorable to the defense because it undercut the State's theory that Wynn had a motive for killing the victim because she had recognized him."
(CR. 2015.)
"In his statement to police, which was not disclosed to the defense, Jerry Mancil claimed that Wynn admitted that he hit the victim 'up side of the head with a bottle.' At trial, however, Mancil testified that Wynn used 'a window cleaner thing' to strike the victim."
(CR. 2019.)
"Angela Smith's statement to police also did not include certain details to which she testified at trial. For example, Smith testified that Wynn had knocked the victim's teeth out and that 'her teeth were on the floor.' Smith also testified that Wynn had called the victim a 'bitch.' Smith's failure to mention these details in her police statement was favorable to the defense because it supported an inference that Smith included the details to conform her testimony to that of other witnesses."
(CR. 2024.)
As stated above, a Brady violation occurs "only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial."
*174 State v. Ellis, 165 So.3d 576, 587 (Ala.2014). After carefully examining the proposed amendment, we wholeheartedly agree with the State that none of the alleged suppressed evidence was material to the outcome of Wynn's trial; therefore, the requirements of Brady could not have been satisfied.
Based on the unique facts presented in this case, we cannot say that the circuit court abused its discretion in denying Wynn's fifth motion to amend his postconviction petition filed 11 years after the original petition once the circuit court determined that the amendment would cause "actual prejudice" and "undue delay." Moreover, based on the claims Wynn sought to raise in his amended petition we believe that if error did occur it was harmless. Wynn is due no relief on this claim.
II.
Wynn next argues that the circuit court erred in summarily dismissing his claim that one of his trial attorneys, Randy Moeller, had an actual conflict of interest that, he says, resulted in the denial of his right to the effective assistance of counsel. Specifically, he argues that Moeller had a conflict of interest because he represented Michael Luckado, a State witness, in an unrelated case. As stated previously, Luckado testified that he saw Wynn near Hardee's on the evening of April 8, 1998, at around 10:00 p.m.
When addressing this claim on direct appeal, we stated the following:
"Shortly, before the trial was scheduled to begin, one of the appellant's attorneys realized that, in a completely unrelated case, he was representing one of the witnesses the State had indicated it intended to call in his case. The attorney consulted the Alabama State Bar and was advised that, pursuant to Rules 1.6 and 1.7 of the Alabama Rules of Professional Conduct, he should withdraw from the appellant's case. After hearing arguments on the attorney's motion to withdraw, the trial court denied the motion. In addition, it ordered the appellant's attorney to consult his notes regarding his representation of the witness and to advise the court if he had obtained information during that representation that he could use to cross-examine the witness when he testified in the appellant's case. The attorney did not subsequently advise the trial court that he had obtained any such information and, in fact, at the hearing on the motion for a new trial, he testified that he had not learned anything in his representation of the witness that he could use to cross-examine him. Furthermore, both the witness and the appellant waived any conflict of interest in this regard, and the appellant's other attorney cross-examined the witness during the trial. (R. 906-08.) Finally, at the hearing on the motion for a new trial, the attorney testified that he could not think of anything the appellant's other attorney should have asked the witness on cross-examination."
Wynn, 804 So.2d at 1130-31. In finding no conflict of interest, we stated:
"[T]here was not a substantial relationship between the appellant's case and the witness' case. In fact, the case involving the witness was a harassment prosecution that was not in any way related to the appellant's case. Also, there is no indication that the appellant's attorney actively represented conflicting interests and that he learned confidential information during his representation of the witness that would have been relevant to a cross-examination of the witness during the appellant's trial. Therefore, under the facts of this case, there was no conflict of interest, and the trial court properly denied defense counsel's *175 motion to withdraw from representation of the appellant."
Wynn, 804 So.2d at 1133.
When dismissing this claim in Wynn's postconviction petition, the circuit court stated:
"This matter comes before the Court on the State of Alabama's Motion to Dismiss Claim III(G)(1)(a) pursuant to Rule 32.7(d) of the Alabama Rules of Criminal Procedure. Claim III(G)(1)(a) is an amendment to Gregory Wynn's Rule 32 petition alleging that Attorney Randy Moeller suffered from an actual conflict of interest. As noted in the State's motion, this claim was raised by Wynn on direct appeal and was decided adversely to Wynn. Wynn v. State, 804 So.2d 1122, 1130-1133 (Ala.Crim.App.2000). Accordingly, this claim is dismissed because it was raised and addressed during the direct appeal. Ala. R. Crim. P., Rule 32.2(a)(4).
"Also, Wynn's April 28, 2014, amendment admits that the issue of whether an actual conflict of interest existed was raised and addressed at trial. Accordingly, and as an alternative ground, this claim is dismissed because it was raised and addressed during Wynn's trial. Ala. R. Crim. P., Rule 32.2(a)(2).
"Finally, Mr. Moeller represented [Michael Luckado] on a charge that this Court has concurrently found would be inadmissible for purposes of impeachment. Therefore, this Court is unconvinced that Mr. Moeller had any information on [Michael Luckado] that could have been used to impeach the witness."
(CR. 1968.)
We agree with the circuit court. Clearly, this claim was raised and addressed at trial and on direct appeal and was correctly summarily dismissed for those reasons. See Rule 32.2(a)(2) and (a)(4), Ala. R. Crim. P. Wynn is due no relief on this claim.
III.
Wynn next argues that the circuit court erred in granting the State's motion in limine to prevent Wynn from presenting "inadmissible evidence pertaining to Michael Luckado" at the postconviction evidentiary hearing. (CR. 1923.) In Wynn's third amended petition, he alleged that his trial counsel's performance was ineffective in her cross-examination of State's witness Michael Luckado because, Wynn argued, counsel failed to impeach Luckado with evidence of his previous conviction for harassment.
In its motion in limine, the State argued:
"Among the factual averments contained in Wynn's recent amendment to Claim III(G)(1)(a) and (b) are averments alleging that a woman named [M.L.] filed two harassment complaints against [Michael] Luckado prior to Wynn's trial. The first of these alleged prosecutions against Luckado, Wynn avers was dismissed for want of prosecution. A charge of harassment that is later dismissed would not be a proper subject of inquiry under Alabama law and procedure. As noted by the Alabama Court of Criminal Appeals, 'a witness may not be unduly harassed and interrogated concerning a matter that does not indicate bias in the particular case under the guise of impeachment.' McMillan v. State, [139 So.3d 184 (Ala.Crim.App.2010) ].
"Wynn further avers that a second harassment charge resulted in a conviction on June 22, 1999. A conviction for harassment would not be admissible as impeachment evidence under Alabama. First, harassment is not a crime that is punishable by death or imprisonment in excess of one year. See Ala. R. Evid., Rule 609(a). Further, harassment is not *176 a crime that pertains to dishonesty or false statement. Ala. R. Evid., Rule 609(a). Accordingly, Luckado's harassment conviction would have been inadmissible as impeachment evidence at Wynn's trial. See, Johnson v. State, 120 So.3d 1130, 1151-1152 (Ala.Crim.App.2009) ('Because the crime of distribution of harmful material to a minor is a misdemeanor, see § 13A-12-200.5(1), Ala. Code 1975, and is not an offense which would bear on the witness's propensity to testify truthfully, it is not admissible under Rule 609 for impeachment purposes.').
"Further, Wynn's petition avers that Luckado's 'appeal was pending when Wynn's case went to trial.' This admission is further grounds for granting the State's motion in limine. As noted by the Alabama Supreme Court, because an appeal of a conviction from the district court to the circuit court is 'de novo,' a district court conviction is vacated by the fact of an appeal. Yancey v. Farmer, 472 So.2d 990, 992 (Ala.1985). See also, McElroy's Alabama Evidence, § 269.05(4) (4th ed. 1991). Accordingly, under the facts alleged in the petition Luckado's conviction would not have been admissible even if the conviction were not otherwise excluded by Rule 609 of the Alabama Rules of Evidence.
"Further, Wynn's petition does not disclose the result of this 'de novo' appeal. According to Calhoun County Circuit Court records, of which this Court may take judicial notice, Michael Luckado was acquitted of the charge of harassment in circuit court. Because an appeal from district court to circuit court is 'de novo,' the effect of Luckado's acquittal is that he has never been convicted of any crime, including the harassment charge that is the basis of the averments in Wynn's petition.
"Wynn's amendment to Claim III(G)(1) of his petition further includes specific allegations pertaining to allegations made by [M.L.] -- the complainant in the harassment case -- against Michael Luckado. These factual averments include allegations that Luckado attempted to break into [M.L.'s] house, watched her through binoculars, threatened to kill her, spread lies about her, and insulted her. Unfortunately for Wynn, none of these accusations constitute a permissible basis for impeachment under Alabama law.
"As clearly stated in Rule 608(b) of the Alabama Rules of Evidence, 'Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's credibility, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence.' Because the petition offers nothing other than multiple alleged instances of specific conduct on the part of Luckado, which would have to be proven through extrinsic evidence (i.e., [M.L.'s] testimony), the petition relies upon wholly inadmissible evidence.
"Granting the State's Motion In Limine will promote judicial economy by avoiding Wynn's efforts to call a third-party ( [M.L.] ) for the purpose of eliciting extrinsic evidence pertaining to alleged specific acts of conduct on the part of Luckado that would not have been admissible at Wynn's trial."
(CR. 1923-25.) The circuit court granted the State's motion in limine for the reasons stated in the State's motion. (CR. 1966-67.)
Also, when addressing Wynn's claim that his trial counsel was ineffective for failing to present evidence to impeach Michael Luckado, the circuit court made the following findings of fact:
*177 "The Court previously dismissed that portion of this claim, as amended, pertaining to the allegation of a conflict of interest created by Attorney [Randy] Moeller's representation of Luckado in an unrelated criminal [case]. Because the issue of whether a conflict of interest created error or prejudiced Wynn was addressed at trial and during the direct appeal, that aspect of the claim is procedurally barred.
"As set forth by previous order of the Court, Luckado could not have been impeached with evidence of his district court conviction for harassment, a case which was on appeal de novo to the circuit court at the time of Wynn's trial. (The State correctly notes that Wynn's petition is flatly incorrect when it alleges that Luckado was in a 'probationary status' at the time of his testimony in the Wynn case. The petition is also incorrect when it says the case was terminated by the State through nolle prosequi. Luckado was acquitted after a trial.) Wynn has not shown any basis on which the fact of this conviction -- later negated in circuit court by Luckado's acquittal -- would have been admissible at this trial. Nor has Wynn established how specific instances of conduct by Luckado related to allegations pertaining to that harassment case would have been admissible under the Alabama Rules of Evidence."
(CR. 2359-60.)
Initially, we note that in Bush v. Alabama Farm Bureau Mutual Casualty Insurance Co., 576 So.2d 175 (Ala.1991), the Alabama Supreme Court stated the following concerning preserving, for appeal, a ruling granting a motion in limine:
"We recognize that the trial court has broad discretion in evidentiary matters. The general rule was stated in State v. Askew, 455 So.2d 36 (Ala.Civ.App.1984), citing C. Gamble, The Motion in Limine: A Pretrial Procedure That Has Come of Age, 33 Ala. L. Rev. 1 (1981), as follows:
" 'In keeping with the vesting of broad discretion in the trial court in this area, it is generally held that the granting of a motion in limine can never be reversible error. The non-moving party may repeat at trial, preferably out of the hearing of the jury, his request for permission to prove the contested matter. This offer of proof is required in order to isolate the error for appeal. It is this refusal at trial to accept that proffered evidence, not the granting of the pretrial motion in limine, that serves as the basis for reversible error. Of course, this ability to bring up the matter a second time would not be available if counsel had requested and the judge had granted a prohibitive-absolute motion in limine.'
" 455 So.2d at 37 (Ala.Civ.App.1984). In Perry v. Brakefield, 534 So.2d 602, 607 (Ala.1988), this Court cited Professor Gamble and stated: 'The clear holding of these cases is that unless the trial court's ruling on the motion in limine is absolute or unconditional, the ruling does not preserve the issue for appeal.' 534 So.2d at 606."
576 So.2d at 177-78. In Bowles v. State, 784 So.2d 1077, 1079 (Ala.Crim.App.2000), we held that the circuit court's ruling granting the motion in limine was not preserved for this Court's review because there was no indication that the ruling on the motion was absolute or unconditional. The same is true in this case. Wynn did not make any offer of proof at the evidentiary hearing concerning this claim. Therefore, this issue was not properly preserved for appellate review.
Furthermore, regardless of any ruling on the State's motion in limine, we agree with the State that evidence of *178 Luckado's harassment conviction would not have been admissible to impeach Luckado. At the time of Wynn's trial Luckado had been convicted of one count of harassment in the district court, and that case was pending on appeal de novo to circuit court. The Alabama Supreme Court has stated the following concerning the effect of a de novo appeal on an underlying conviction: "If ... the accused is entitled to a trial de novo in circuit court on an appeal of a district court conviction, the district court's judgment of conviction is vacated by such an appeal and the district court conviction is not admissible to prove that the accused did the act he was accused of." Yancey v. Farmer, 472 So.2d 990, 992 (Ala.1985). A vacated conviction is a nullity.
Moreover, the alleged victim would not have been permitted to testify to specific instances of conduct by Luckado. As the circuit court stated, Rule 608(b), Ala. R. Evid., provides: "Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness's character for truthfulness, other than conviction of crime as provided in Rule 609, may not be inquired into on cross-examination of the witness nor proved by extrinsic evidence."
Wynn further argues that the circuit court's order on the motion in limine precluded him from presenting evidence of Luckado's bias in favor of the State. We agree with the State that the circuit court's order on the motion did not prevent Wynn from calling Luckado at the postconviction evidentiary hearing and asking him about any possible bias he might have had in favor of the State. As cited above, the order only precluded the harassment victim, M.L., from testifying at the postconviction hearing. Moreover, Wynn appealed de novo to the circuit court and was acquitted of the harassment charge. It seems obvious that Luckado had no deal with the State concerning the status of his harassment charge at the time of Wynn's trial.
The circuit court's ruling on the State's motion in limine was not erroneous and was consistent with Alabama law. Wynn is entitled to no relief on this claim.
IV.
Wynn next argues that the circuit court erred in denying him relief on his claim that the State violated Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), by failing to disclose evidence that a relative of State's witness, Cledus Ferrell,[5] expected to receive a $10,000 reward for contacting police with information that she had learned from Ferrell. (Wynn's brief, at p. 50.)
It is important to note that, in Wynn's third amended petition, he merely pleaded the following:
"Cledus Ferrell -- a key prosecution witness who testified that Mr. Wynn bragged about committing the murder, and one of the persons defense counsel attempted to prove was involved in this murder -- received reward money for this cooperation in this case. The prosecution never disclosed to Mr. Wynn's trial attorneys at any time prior to, during, or after Mr. Wynn's trial that Mr. Ferrell had received a financial reward for the information that he provided in this case."
(CR. 1444-45.) This was Wynn's entire pleading on this issue. However, on appeal, Wynn makes the following argument:
"Wynn's capital murder conviction depended on the testimony of several witnesses *179 from the same circle of friends. The State presented these witnesses' testimony without disclosing that Andrena Douglas, a relative of two testifying witnesses, expected a $10,000 payment for connecting those witnesses with police."
(Wynn's brief at p. 50.) In his petition Andrena Douglas was not identified. In fact, Wynn pleaded that Cledus Ferrell received the reward money. "An appellant cannot raise an issue on appeal from the denial of a Rule 32 petition which was not raised in the Rule 32 petition." Arrington v. State, 716 So.2d 237, 239 (Ala.Crim.App.1997).
The circuit court made the following findings of fact in regard to this claim:
"In his petition, Wynn alleges that witness Cledus Ferrell received reward money for his cooperation in this case and that the State violated the petitioner's due process rights by not revealing this information. A Brady [v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963),] violation occurs, however, only when the prosecution suppresses impeachment or exculpatory evidence that is material. Strickler v. Greene, 527 U.S. 263, 280-81, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999). Having considered the evidence produced at the evidentiary hearing and the evidence from trial, the Court finds that Wynn failed to prove this claim.
"No evidence was presented that Ferrell received any reward money in this case. Thus, the plain allegations made in the Rule 32 petition were never proven by petitioner. This, alone, justifies denial of this claim. Ala. R. Crim. P., Rule 32.3.
"The payment of reward money in this case consisted of $5,000 paid by the Hardee's corporate headquarters to Andrena Douglas after the conclusion of the Wynn trial. There is no evidence to support a finding that the State controlled this reward money or knew with any certainty at the time of Wynn's trial that it would be paid to Andrena Douglas. At least one police officer, Wayne Willis, knew Andrena Douglas was interested in the reward money and Ms. Douglas was placed in touch with Hardee's representatives such that she was in a position to receive the reward at the conclusion of Wynn's murder trial.
"Wynn's claim fails, however, because Andrena Douglas was not a witness at Wynn's trial. While evidence of a witness's receipt of a reward (or hope of receipt of a reward) is grounds for impeachment -- inquiry as to possible bias during a criminal trial -- this evidence could not have served such a purpose in this case. Without the testimony of Douglas, there could be no cross-examination and impeachment by the defense. In short, Wynn did not lose an opportunity to use this evidence to cross-examine a witness. Neither Brady nor Giglio [v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972) ] were implicated on the facts of this case.
"....
"Wynn failed to carry his burden of proof as to this claim. Ala. R. Crim. P., Rule 32.3. This claim, then is denied."
(CR. 2342-44.) We agree with the circuit court that Wynn failed to meet his burden of proof in regard to this claim; therefore, he failed to comply with Rule 32.3, Ala. R. Crim. P.
First, it is clear from the record of Wynn's trial that his attorneys were aware that a monetary reward had been offered in connection with Bliss's murder. One of Wynn's attorneys questioned Brandy Mancil about whether she expected to receive the reward money. (Trial R. 1147.) Also, Wynn presented no evidence at the evidentiary hearing indicating that any State official *180 was aware that Ferrell was going to get any reward money.
Also, at the evidentiary hearing Andrena Douglas testified that she received a $5,000 check from Hardee's for providing information to police about Bliss's murder. She testified that neither her brother, Cledus Farrell, or her cousin, Carlos McCallum, knew that she had provided information to police before trial. In fact, Douglas testified, her husband did not know about the reward until she received a $5,000 check after Wynn's trial. No evidence was presented at the hearing indicating that Ferrell had received any reward or had any hope of receiving any reward.
" 'To [establish] a Brady [v. Maryland, 373 U.S. 83 (1963) ] violation, a defendant must show that " '(1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issues at trial.' " Johnson v. State, 612 So.2d 1288, 1293 (Ala.Cr.App.1992), quoting Stano v. Dugger, 901 F.2d 898, 899 (11th Cir.1990), cert. denied, Stano v. Singletary, 516 U.S. 1122, 116 S.Ct. 932, 133 L.Ed.2d 859 (1996). See Smith v. State, 675 So.2d 100 (Ala.Cr.App.1995). " 'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome.' " Johnson, 612 So.2d at 1293, quoting United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).'
" Freeman v. State, 722 So.2d 806, 810 (Ala.Crim.App.1998). However, ' "the rule of Brady applies only in situations which involve 'discovery after trial of information which had been known to the prosecution but unknown to the defense.' " ' Bates v. State, 549 So.2d 601, 609 (Ala.Crim.App.1989) (quoting Gardner v. State, 530 So.2d 250, 256 (Ala.Crim.App.1987), quoting in turn United States v. Agurs, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976) ) (some emphasis added)."
Bryant v. State, 181 So.3d 1087, 1133-34 (Ala.Crim.App.2011) (on return to second remand). Other courts have held that any possible error in failing to disclose evidence of a reward may be harmless if the failure to disclose the evidence did not undermine confidence in the result. See United States v. Mentor, 570 Fed.Appx 894, 896 (11th Cir.2014) (not selected for publication in the Federal Reporter) ("The government's failure to disclose that [a state witness] inquired before trial whether he qualified for the reward does not 'undermine confidence in the outcome.' See United States v. Bagley, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985).... Mentor cannot demonstrate that the result of the proceedings would have been different but for the government's failure to disclose that [the state witness] inquired about a reward."); Johns v. Bowersox, 203 F.3d 538, 545 (8th Cir.2000) ("[T]he suppressed evidence had limited impeachment value. In light of the abundant evidence showing John's involvement in the murder we conclude that the result of the proceeding would not have been different had the State disclosed [evidence that a state witness had received a monetary reward for testifying].").
Here, given that the witness who received the reward money, Andrena Douglas, did not testify at Wynn's trial and that the two witnesses who did testify did not know that Douglas was eligible for any reward money, we are confident that any *181 possible failure to disclose Douglas's receipt of the reward money would not have undermined confidence in the outcome of Wynn's trial.
The circuit court correctly found that Wynn failed to meet his burden of proof in regard to this claim. See Rule 32.3, Ala. R. Crim. P. Wynn is due no relief.
V.
Wynn next argues that the circuit court erred in denying his claim that his trial counsel was ineffective for failing, he says, to challenge the "State's only eyewitness." Specifically, he argues that his trial counsel failed to challenge Michael Luckado's testimony by presenting an expert on eyewitness testimony. At stated above, Luckado testified that he saw Wynn near the Hardee's restaurant at around 10:00 p.m. on the night of the murder.
To prevail on a claim of ineffective assistance of counsel the petitioner must show: (1) that counsel's performance was deficient; and (2) that he was prejudiced by the deficient performance. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac, 456 U.S. 107, 133-34 (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' See Michel v. Louisiana, [350 U.S. 91], at 101 [ (1955) ]. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way."
Strickland, 466 U.S. at 689 (citations omitted).
Wynn was represented at trial by attorneys Valerie Goudie and Randy Moeller. Both attorneys testified at the postconviction evidentiary hearing. Goudie testified that she was lead counsel on Wynn's case, that she was appointed to represent Wynn, that she had practiced law for approximately 9 years when she was appointed to Wynn's case, and that about forty percent of her work was on criminal cases. Moeller testified that he was appointed as cocounsel on Wynn's case, that he had been practicing 4 years at the time of the appointment, and that over fifty percent of his work was on criminal cases.
The circuit court made the following findings of fact in regard to this claim:
"Wynn's petition next alleges that his counsel were ineffective for failing to challenge the eyewitness identification of [Wynn] by Michael Luckado. At the hearing in this case, however, both counsel testified that Wynn had informed them prior to trial that he was present in the Hardee's building at the time of *182 the murder.[6] Randy Moeller testified that this information impacted the defense's preparation for trial.
"Further, the Court has considered the testimony of Dr. Jeffrey Neuschatz on the issue of eyewitness identification. The Court finds that this testimony would not have resulted in the suppression of the photo identification in this case. Nothing espoused by Dr. Neuschatz during his testimony came close to reaching the legal standard for suppression of a pre-trial photographic lineup. See, e.g., Manson v. Brathwaite, 432 U.S. 98 (1977) ; Neil v. Biggers, 409 U.S. 188 (1972) ; Simmons v. United States, 390 U.S. 377 (1968) ; Ex parte Stout, 547 So.2d 901 (Ala.1989) (dicta); Ex parte Cochran, 500 So.2d 1179 (Ala.1985). The most critical testimony of Dr. Neuschatz about the procedure was that Wynn was one of only two people in the six person lineup wearing a black jacket, which he thought was important because Wynn had been described wearing a black jacket at the time of the crime. This simply is not the type of circumstance that would have resulted in the suppression of this pre-trial identification.
"....
"First, a reasonable attorney would not have to pursue such evidence where the defendant has confided that he was, in fact, present in the building at the time of the murder. After all, counsel's knowledge that their client was at the Hardee's that night increases the likelihood that Luckado's identification was correct, making an eyewitness identification challenge a less valuable course of action than other possible defenses. There was no evidence or testimony presented at the evidentiary hearing to show that defense counsel had no choice but to seek out an expert such as Dr. Neuschatz in order to provide effective assistance of counsel. In fact, the State correctly noted in its post-hearing brief that there was no evidence admitted at the evidentiary hearing to show that such experts were available or commonly used in Alabama at the time of Wynn's trial.
"A reasonable attorney -- knowing their client has admitted to being present at the murder scene -- could be considered wise to avoid wasting effort on such a course of action when they know that any eyewitness identification expert would not have testified until the defense's case-in-chief, after the State's presentation of evidence. In Wynn's case, this would have been after the State introduced the testimony of numerous witnesses who heard incriminating admissions made by Wynn during the hours following the murder, an evidence trail connecting Wynn to a large amount of cash -- including the Hardee's $100 bait bill -- immediately following the murder, and, most importantly, evidence that checks stolen from the Hardee's during the murder were found in Wynn's residence. Under such circumstances, the failure to not seek out an expert who would not 'tell [the jury] that a particular witness made an inaccurate *183 identification,' or who would say that under the facts of this case 'it is still possible to make a correct identification' was not unreasonable. Even Wynn's expert conceded that his testimony is sometimes rejected on grounds that other evidence makes his testimony unimportant to the case.
"Because Wynn did not prove facts that would establish prejudice or deficient performance under Strickland, this claim is denied."
CR. 2350-53.)
First, we agree with the circuit court that Wynn's attorneys were reasonable in relying on Wynn's statements to them. Goudie and Moeller both testified at the evidentiary hearing that Wynn admitted to them that he was in the Hardee's restaurant at the time of the murder. (R. 264; 307.)
"The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.
Strickland, 466 U.S. at 691.
Second, even if we ignore what Wynn told his attorneys, this Court has held that an attorney was not ineffective in failing to secure the services of an expert on eyewitness testimony. As we stated in Davis v. State, 44 So.3d 1118 (Ala.Crim.App.2009) :
"Davis argues that counsel were ineffective for failing to retain the services of an expert on eyewitnesses identifications to impeach [the eyewitness's] testimony. However, ' "[T]he failure to call an expert and instead rely on cross-examination does not constitute ineffective assistance of counsel." ' State v. Hartman, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150, 1177 (2001), quoting State v. Nicholas, 66 Ohio St.3d 431, 436, 613 N.E.2d 225, 230 (1993). Decisions ' "[w]hether to engage in cross examination, and if so to what extent and in what matter, are ... strategic in nature' and generally will not support an ineffective assistance claim.' Dunham v. Travis, 313 F.3d 724, 732 (2nd Cir.2002)."
44 So.3d at 1136.
Wynn failed to satisfy either prong of the Strickland test. The circuit court correctly denied relief on this claim. Wynn is due no relief.
VI.
Wynn next argues that the circuit court erred in summarily dismissing his claim that newly discovered evidence warrants a new trial. Specifically, Wynn argues that the newly discovered evidence consists of a statement by Bobby Lee Woods that, while he was incarcerated in the Calhoun County jail with Carlos McCallum, about a year after Wynn's trial, McCallum told Woods that McCallum witnessed Cledus Ferrell murder Bliss. Wynn asserted that Woods would testify that McCallum made those statements to him.
The circuit court stated the following concerning this claim:
"Woods states that he heard McCallum make this alleged admission while both individuals were incarcerated in the Calhoun County jail after Wynn's trial. Thus, Wynn's claim rests upon an allegation that Woods's testimony (not McCallum's testimony) would have made a difference if Woods had been called at Wynn's trial. This ground for relief is without merit. Assuming for argument's sake that Woods would testify exactly as alleged in the petition, this claim would fail for the reasons discussed, infra.
*184 "....
"Under Alabama law, three elements must exist before evidence that a person other than the accused committed the charged offense can be ruled admissible: (1) the evidence 'must relate to the "res gestae" of the crime'; (2) the evidence must exclude the accused as a perpetrator of the offense; and (3) the evidence 'would have to be admissible if the third party was on trial.' Ex parte Griffin, 790 So.2d 351, 354 (Ala.2000).
"The proffered testimony of Woods contained in the petition fails to satisfy this test. Although the proffer does appear to relate to the 'res gestae' of the crime, it does not exclude the petitioner as a perpetrator of the offense and the evidence (Woods's testimony of an alleged conversation with Carlos McCallum) would not be admissible if Cledus Ferrell (the third party) was on trial due to the prohibition on hearsay offered to prove the truth of the matter asserted. Because this evidence is inadmissible, it cannot be material.
"....
"For these reasons, Wynn's newly discovered evidence claim fails to establish a prima facie case which would warrant the need for an evidentiary hearing. Assuming that Woods testified at an evidentiary hearing precisely as his testimony is proffered in the petition, Wynn would not be entitled to relief for the reasons previously stated. This claim, therefore is summarily dismissed. Ala. R. Crim. P., Rule 32.7(d).
"Assuming, arguendo, that Wynn could avoid the dismissal caused by the lack of materiality in his averment, Wynn's claim would next be fatally flawed inasmuch as the averred evidence is merely impeachment evidence. Under the Alabama Rules of Evidence, the testimony of Woods as to alleged statements by Carlos 'Dump' McCallum would constitute hearsay for which there would be no exception. Ala. R. Evid., Rule 801, et seq. At trial, Woods would not have been allowed to testify that Carlos McCallum allegedly told him he witnessed Cledus Ferrell commit the charged offense to prove the truth of the matter asserted, due to this prohibition on hearsay.
"At best, Woods's proffered testimony would be available to impeach Carlos McCallum once McCallum denied making any such statement. See, Ala. R. Evid., Rule 613(b). See also Vines v. State, 74 So.3d 98 (Ala.Crim.App.2010) (Affidavit of individual claiming material witness in rape case recanted her story not 'newly discovered evidence,' such a claim at most, would constitute impeachment evidence). Even then, however, the proffered testimony of Woods would not be admissible as substantive evidence. See, e.g., Lindley v. State, 728 So.2d 1153, 1155 (Ala.1998) ; Hooper v. State, 585 So.2d 137, 139-140 (Ala.1990).
"Because the proffered testimony could never amount to more than impeachment evidence, this 'evidence' cannot meet the requirements of Rule 32.1(e)(3) of the Alabama Rules of Criminal Procedure. Vines, 74 So.3d 98. Accordingly, Wynn's newly discovered evidence [claim] is summarily dismissed."
(CR. 1748-53.)
Rule 32.1, Ala. R. Crim. P., defines newly discovered evidence as evidence in which:
"(1) The facts relied upon were not known by the petitioner or the petitioner's counsel at the time of trial or sentencing or in time to file a posttrial motion pursuant to Rule 24, or in time to be included in any previous collateral proceeding and could not have been discovered *185 by any of those times through the exercise of reasonable diligence;
"(2) The facts are not merely cumulative to other facts that were known;
"(3) The facts do not merely amount to impeachment evidence;
"(4) If the facts had been known at the time of trial or of sentencing, the result probably would have been different; and
"(5) The facts establish that the petitioner is innocent of the crime for which the petitioner was convicted or should not have received the sentence that the petitioner received."
Alabama courts have long held that newly discovered evidence in the form of hearsay is not sufficient to warrant a new trial.
"The trial court will not, of course, be put in error for refusing new trial because of newly discovered evidence when such evidence would not be admissible upon a retrial of the cause. This purported newly discovered evidence, being affidavits of two witnesses that the state's witness ... admitted to affiants that he, and not the defendant, killed deceased, is but hearsay evidence -- an extra-judicial confession -- and would not be admissible to show that another committed the offense. A defendant can disprove his guilt by proving the guilt of some other person. Brown v. State, 120 Ala. 342, 25 So. 182 [ (1899) ] ; McDonald v. State, 165 Ala. 85, 51 So. 629 [ (1910) ]. But this must be done by legal evidence, and not by the testimony of witnesses who heard another admit that he committed the offense; this is the merest hearsay -- is but an extra-judicial confession or admission not admissible in evidence. Welsh v. State, 96 Ala. 92, 11 So. 450 [ (1892) ] ; Underhill on Criminal Evidence (2d Ed.) p. 276, § 145. While this newly discovered evidence was not admissible to show that another committed the offense, it will be admissible to impeach or contradict [the state witness], who testified as a witness against the defendant. ..."
Houston v. State, 208 Ala. 660, 663, 95 So. 145, 147 (1923). See also Story v. State, 439 So.2d 1317 (Ala.Crim.App.1983) ; Garrison v. State, 416 So.2d 793 (Ala.Crim.App.1982) ; McBryar v. State, 368 So.2d 568 (Ala.Crim.App.1979).
More recently this court has stated:
" 'The testimony of a witness that a person, other than the defendant, confessed to the witness that he himself committed the crime charged against the defendant, is hearsay and inadmissible. Welsh v. State, 96 Ala. 92, 96, 11 So. 450 (1891) [1892]. "Such declarations are hearsay evidence, the weakest, most uncertain, and most dangerous." Snow v. State, 58 Ala. 372, 375 (1877) ; Smith v. State, 9 Ala. 990, 995-96 (1846) ; Prince v. State, 356 So.2d 750, 751 (Ala.Cr.App.1978).'
" Garrison v. State, 416 So.2d 793, 794 (Ala.Cr.App.1982)."
Snyder v. State, 683 So.2d 45, 46 (Ala.Crim.App.1996).
The hearsay evidence in this case was not admissible to prove the truth of its content but would be admissible only for purposes of impeachment. Rule 32.1(3), Ala. R. Crim. P., specifically states that newly discovered evidence is not evidence that "merely amount[s] to impeachment evidence." The proffered evidence in this case, by definition, did not satisfy the test for newly discovered evidence contained in Rule 32, Ala. R. Crim. P. The circuit court correctly denied relief on this claim. Wynn is due no relief.
VII.
Wynn next argues that the circuit court failed to use its independent judgment *186 when reviewing Wynn's claims because, he argues, it relied on the State's proposed order when disposing of his petition. Before the evidentiary hearing, Wynn filed a motion entitled "Motion for Independent Fact-Finding." In the motion, Wynn requested that
"the Court conduct its own independent fact-finding following the Rule 32 hearing in this case. This motion is made pursuant to Rule 32 of the Alabama Rules of Criminal Procedure and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. See Martinez v. Ryan, [566 U.S. 1,] 132 S.Ct. 1309, 1317 (2012) (recognizing that an initial-review collateral proceeding in state court must provide the petitioner with 'fair process and the opportunity to comply with the State's procedures and obtain an adjudication on the merits of his claims')."
(CR. 2180-81.) In response to the motion, the circuit court issued an order stating:
"It appears the petitioner is requesting this Court to follow the law and issue its own independently researched and reasoned order upon conclusion of the evidentiary hearing in this case. The Court intends to follow the law in all that it does in this and every other case. Therefore, the motion for independent fact-finding filed by Gregory R. Wynn is hereby granted."
(CR. 2183.) Wynn concedes in his brief that the State's proposed order was not adopted in toto by the circuit court, and that there were differences in the State's proposed order and the final order signed by the circuit court.
Generally,
"where a trial court does in fact adopt the proposed order as its own, deference is owed to that order in the same measure as any other order of the trial court. In Dobyne v. State, 805 So.2d 733, 741 (Ala.Crim.App.2000), the Court of Criminal Appeals stated:
" ' " 'While the practice of adopting the state's proposed findings and conclusions is subject to criticism, the general rule is that even when the court adopts proposed findings verbatim, the findings are those of the court and may be reversed only if clearly erroneous.' " '
" 805 So.2d at 741 (quoting other cases; emphasis added). In McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003), the Court of Criminal Appeals stated that 'even when a trial court adopts verbatim a party's proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous.' Cf. United States v. El Paso Natural Gas Co., 376 U.S. 651, 656, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964) (expressing disapproval of the 'mechanical' adoption of findings of fact prepared by a party, but stating that such findings are formally those of the trial judge and 'are not to be rejected out-of-hand')."
Ex parte Ingram, 51 So.3d 1119, 1122-23 (Ala.2010).
The next year in Ex parte Scott, [Ms. 1091275, March 18, 2011] --- So. 3d ---- (Ala.2011), the Alabama Supreme Court again reversed the trial court's judgment and order adopting the State's answer and denying relief. The Supreme Court stated:
"Here, we do not even have the benefit of an order proposed or 'prepared' by a party; rather the order is a judicial incorporation of a party's pleading as the 'independent and impartial findings and conclusions of the trial court.' [
*187 Ex parte Ingram, 51 So.3d 1119] at 1124 [ (Ala. 2010) ]. The first and most fundamental requirement of the reviewing court is to determine 'that the order and the findings and conclusions in such order are in fact those of the trial court.' Id. at 1124. The trial court's verbatim adoption of the State's answer to Scott's Rule 32 petition as its order, by its nature, violates this Court's holding in Ex parte Ingram."
--- So. 3d at ----.
In distinguishing Ingram and Scott, this Court in Miller v. State, 99 So.3d 349 (Ala.Crim.App.2011), stated:
"The fact situation in this case is distinguishable from the fact situations in Ex parte Ingram [, 51 So.3d 1119 (Ala.2010) ] and Ex parte Scott [, [Ms. 1091275, March 18, 2011] --- So. 3d ---- (Ala.2011) ]. Here, the circuit judge who denied Miller's Rule 32 petition did not preside at Miller's trial; however, in the order denying Miller's Rule 32 petition the court did not profess to have personal knowledge of the performance of Miller's trial counsel. Furthermore, the circuit court in this case did not base its order denying Miller's Rule 32 petition upon the State's initial answer to the Rule 32 petition. Rather, after numerous pleadings, and after the evidentiary hearing on Miller's Rule 32 claims, the court allowed submission of post-hearing briefs."
99 So.3d at 359.
Here, the record clearly shows that the order issued by the circuit court was a product of its own independent judgment and not "merely an unexamined adoption of a proposed order submitted by the State." 99 So.3d at 359. Moreover, the circuit court's findings are not clearly erroneous. Wynn is due no relief on this claim.
VIII.
Last, the State concedes that Wynn is entitled to a new sentencing hearing based on the United States Supreme Court's recent decision in Montgomery v. Louisiana, --- U.S. ----, 136 S.Ct. 718, 193 L.Ed.2d 599 (2016), applying its earlier holding in Miller v. Alabama, 567 U.S. 460, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), retroactively to all cases on collateral review.[7]
In Miller v. Alabama, the United States Supreme Court explained:
"[T]he Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders. Cf. Graham [v. Florida, 560 U.S. 48] at 74, 130 S.Ct. [2011], at 2030 [ (2010)[8] ]('A State is not required to guarantee eventual freedom,' but must provide 'some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation'). By making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment. Because that holding is sufficient to decide these cases, we do not consider Jackson's and Miller's alternative argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, *188 or at least for those 14 and younger. But given all we have said in Roper [v. Simmons, 543 U.S. 551 (2005) ], Graham, and this decision about children's diminished culpability and heightened capacity for change, we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty we noted in Roper and Graham of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.' Roper, 543 U.S. at 573, 125 S.Ct. 1183 ; Graham, 560 U.S. at 67-71, 130 S.Ct. at 2026-2027. Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison."
567 U.S. at 479-80, 132 S.Ct. at 2463.[9]
Since the Supreme Court's decision in Miller v. Alabama, the Alabama Supreme Court in Ex parte Henderson, 144 So.3d 1262 (Ala.2013), addressed a mandamus petition filed by several juveniles charged with capital-murder offenses.[10] The juveniles argued that their indictments were due to be dismissed because, they said, "the capital-murder indictments were unconstitutional as applied to them in that the indictments failed to charge them with a valid crime. ..." 144 So.3d at 1265. In declining to issue a writ of mandamus, the Supreme Court held that Miller did not invalidate the capital-murder indictments of the juveniles.[11] In compliance with the *189 mandate of Miller, the Supreme Court held that the following circumstances should be considered at juvenile sentencing hearings after a capital-murder conviction:
"We hold that a sentencing hearing for a juvenile convicted of a capital offense must now include consideration of: (1) the juvenile's chronological age at the time of the offense and the hallmark features of youth, such as immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile's diminished culpability; (3) the circumstances of the offense; (4) the extent of the juvenile's participation in the crime; (5) the juvenile's family, home, and neighborhood environment; (6) the juvenile's emotional maturity and development; (7) whether familial and/or peer pressure affected the juvenile; (8) the juvenile's past exposure to violence; (9) the juvenile's drug and alcohol history; (10) the juvenile's ability to deal with the police; (11) the juvenile's capacity to assist his or her attorney; (12) the juvenile's mental-health history; (13) the juvenile's potential for rehabilitation; and (14) any other relevant factor related to the juvenile's youth. See generally Commonwealth v. Knox [, 50 A.3d 732 (Pa.Super.Ct.2012) ]. We recognize that some of the factors may not apply to a particular juvenile's case and that some of the factors may overlap. Nevertheless, we believe that providing the trial court with guidance on individualized sentencing for juveniles charged with capital murder comports with the guidelines of Miller."
144 So.3d at 1283-84 (footnote omitted).
For the reasons stated above, we affirm the circuit court's dismissal of the issues related to the guilt phase of Wynn's capital-murder trial. However, this case is hereby remanded to the Calhoun Circuit Court for that court to vacate Wynn's sentence of life imprisonment without the possibility of parole and to hold a new sentencing hearing that complies with Miller v. Alabama and the specific requirements set out by the Alabama Supreme Court in Ex parte Henderson.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR RESENTENCING.
Kellum, Burke, and Joiner, JJ., concur; Windom, P.J., recuses herself.

This Court has taken judicial notice of our record of Wynn's direct appeal. See Nettles v. State, 731 So.2d 626, 629 (Ala.Crim.App.1998).

In Alabama, "[i]f the statements are not exculpatory, the statements of prospective witnesses need not be produced by the State." Gowens v. State, 639 So.2d 524, 526 (Ala.Crim.App.1993).

However, Wynn presented only three witnesses at the postconviction evidentiary hearing.

The State appears to argue that Wynn failed to exercise due diligence in amending his petition because, it says, he was in possession of the witness statements since September 2013 but did not seek to amend his petition until July 2014. Wynn argues that he filed the amendment as soon as possible because, he says, he was not given the audiotaped witness statements until May 2014. The record shows that the transcripts of the witness statements were turned over to Wynn in September 2013 and the transcript pages are cited in the amendment in support of Wynn's assertions. The Alabama Supreme Court in Ex parte Rhone held that this Court erred in imposing the burden on the petitioner to exercise due diligence when amending his petition. The Supreme Court said: "Such a burden is clearly inconsistent with the mandate of this Court, as expressed in both its decisions and in Rule 32, that leave to amend should be freely granted." 900 So.2d at 458-59. However, the Alabama Supreme Court appeared to modify that holding in Ex parte Jenkins by stating that this Court could consider whether the petitioner unduly delayed in filing the amendment. Ex parte Jenkins, 972 So.2d at 164.

This witness's name is spelled "Cletus" and "Cledus" in various portions of the record. We have used the spelling contained in the postconviction petition.

By raising this claim in Wynn's postconviction petition Wynn waived his attorney-client privilege concerning this issue. As we stated in Ex parte Lewis, 36 So.3d 72 (Ala.Crim.App.2008) : ''We join the majority of other jurisdictions that have addressed this issue and hold that when a petitioner raises a claim of ineffective assistance of counsel in a postconviction proceeding he waives the attorney-client privilege 'only with respect to matters relevant to his allegations of ineffective assistance of counsel.' State v. Taylor, 327 N.C. [147] at 152, 393 S.E.2d [801] at 805 [ (1990) ]." 36 So.3d at 78 (footnote omitted).

The State notes that this case should not be remanded for a new sentencing hearing until Wynn has "exhausted the appeal of his guilt-phase claims for post-conviction relief." (State's brief, at p. 52.) This Court has considered and denied relief on all the guilt-phase claims raised by Wynn in his brief on appeal.

In Graham, the United States Supreme Court held that it was unconstitutional and in violation of the Eighth Amendment to sentence a juvenile to life imprisonment without the possibility of parole when that juvenile had not committed a homicide.

After the United States Supreme Court released Miller, Wynn amended his postconviction petition to assert a Miller claim. The circuit court summarily dismissed that issue after finding that Miller did not apply retroactively to cases on collateral review. (CR. 1738.) At the time, the circuit court's ruling was consistent with Alabama law. See Williams v. State, 183 So. 3d 198 (Ala.Crim.App.2014), vacated by Williams v. Alabama, --- U.S. ----, 136 S.Ct. 1365, 194 L.Ed.2d 347 (2016).

Section 13A-5-39(1), Ala. Code 1975, was amended effective May 11, 2016, to modify the definition of capital murder in consideration of Miller v. Alabama. A capital offense is now defined as: "An offense for which a defendant shall be punished by a sentence of death or life imprisonment without parole, or in the case of a defendant who establish that he or she was under the age of 18 years at the time of the capital offense, life imprisonment, or life imprisonment without parole, according to the provisions of this article." Section 13A-5-2(f), Ala. Code 1975, was recently modified to read: "Every person convicted of murder shall be sentenced by the court to imprisonment for a term, or to death, life imprisonment without parole, or life imprisonment in the case of a defendant who establishes that he or she was under the age of 18 years at the time of the offense, as authorized by subsection (c) of Section 13A-6-2." Other statutes were likewise amended to reflect this significant change in the law. See § 13A-6-2(c), Ala. Code 1975; § 13A-5-43(d) and (e), Ala. Code 1975.

Other state courts that have considered the implication of Miller on juvenile sentences also remanded those cases only for a new sentencing hearing. See People v. Wilder, 371 P.3d 727, 729 (Colo.App.2016) ("[W]e vacate Wilder's sentence of life without possibility of parole and remand this case to the trial court, directing it to consider whether life without the possibility of parole is an appropriate sentence given the defendant's 'youth and attendant characteristics' as discussed in Miller, 567 U.S. at ----, 132 S.Ct. at 2471."); Veal v. State, 298 Ga. 691, 784 S.E.2d 403 (2016) ("[W]e vacate the life without parole sentence imposed on Appellant for malice murder and remand the case for resentencing on that count in accordance with this opinion, Miller, and Montgomery [v. Louisiana, --- U.S. ----, 136 S.Ct. 718 (2016) ]."); People v. Nieto, 52 N.E.3d 442, 455, 402 Ill.Dec. 521 (2016) ("Following Montgomery, we vacate defendant's sentence and remand for resentencing."); State v. Valencia, 239 Ariz. 255, 258, 370 P.3d 124, 127 (2016) ("[I]n light of the heretofore unknown constitutional standard announced in Montgomery, the parties should be given the opportunity to present evidence relevant to that standard."); Horsley v. State, 160 So.3d 393, 408 (Fla.2015) ("On remand, the trial court should hold an individualized sentencing hearing pursuant to section two of chapter 2014-220, Laws of Florida, to consider the enumerated and any other pertinent factors 'relevant to the offense and [the appellant's] youth and attendant circumstances.' "); People v. Tate, 352 P.3d 959, 970 (Colo.2015) ("[W]e hold that the proper remedy after Miller is to vacate a defendant's [life without parole sentence] and to remand the case to the trial court to consider whether [life without parole] is an appropriate sentence given the defendant's 'youth and attendant characteristics.' ").